Leonard A. HILL, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant-Appellee.

No. 72–3390.

United States Court of Appeals,
Fifth Circuit.

July 6, 1973.

Hubert L. Gill, Austin, Tex., for plaintiff-appellant.

Ralph E. Hartman, Jack Pew, Jr., Dallas, Tex., for defendant-appellee.

Before WISDOM, DYER and INGRAHAM, Circuit Judges.

DYER, Circuit Judge:

Hill brought this suit against American Airlines, Inc., alleging racial discrimination in employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2, and of the Civil Rights Act of 1866, 42 U.S. C.A. § 1981. Having been unsuccessful in the district court, he raises three basic issues on appeal: (1) that the class action portion of his complaint was erroneously dismissed; (2) that the district court should have entered judgment for him for damages for discriminatory wage rates and loss of back pay; and (3) that three claims of his complaint in the court below were incorrectly dismissed as not having been raised before the Equal Employment Opportunity Commission (EEOC). We conclude that only his third specification of error has merit, and reverse and remand for further proceedings on that point.

Hill, a black, was hired by American on December 25, 1965, and worked as a Skycap, initially on a part-time basis. His work consisted primarily of performing a portering function at the San Antonio airport facility. By July 13, 1968, Hill was working full time and was earning $2.20 per hour; he was also allowed to supplement his income by accepting tips. This hourly wage rate was $.15 per hour below the maximum allowed an American Skycap.[1] Prior to July 13, American employed six Skycaps at San Antonio and each of them was black. Three of these men earned the maximum rate of $2.35 per hour and had greater seniority than Hill; the other two earned less than Hill, with correspondingly less seniority.

In March of 1966, while Hill was still working only part time, American modified its method of baggage handling and instituted a curbside service system. Under this system the Skycaps assisted pre-ticketed outbound passengers by checking their baggage through to their destination. Because few if any tips were received by a man permanently stationed at the curbside position, the duty was rotated in order to equalize the effects on the Skycaps.

In early 1968 American again decided to modify the baggage handling procedures at its San Antonio facility. The new idea was to hire one person whose only job would be to man the curbside station for the four peak daytime hours. To staff this position American wanted a young, college-age male and, on July 13, 1968, hired Jesse Hart, a white male.

Prior to his becoming the permanent curbside attendant, Hart had been employed as a part-time International Baggage Agent for American. He was working approximately two hours daily at this job and was being paid $2.84 per hour.[2]

1. Non-supervisory employees working for American who are not covered by a labor agreement are paid on a scale established for each type or grade of job. Each grade has a minimum rate which is normally paid to new hires, a service limit which can be attained by automatic raises given over a period of time, and a maximum which can be achieved only by merit increases. For a Skycap, grade 26, these rates in 1968 were $1.91, $2.11, and $2.35 per hour respectively.

2. Hart's old job was a grade 30 position with a minimum of $2.58 per hour, a service limit of $3.00 per hour, and a maximum of $3.54 per hour.

Hart had expressed an interest in working more hours and, when the new Skycap job became available, he was selected and was paid $2.35 per hour.[3] The part-time position was not offered to Hill.

With a permanent curbside attendant employed, the other Skycaps performed only their portering functions during the hours Hart worked. During Hart's off duty hours, his duties were either assumed by the other Skycaps in rotation or they were done by one Skycap who voluntarily took over Hart's duties.

For the first year that Hart worked, Hill had little contact with him because Hill essentially worked the night shift. In July 1969, however, Hill began working the day shift and on July 12, Hart's day off, he was assigned for the first time to perform Hart's duties at the permanent curbside station. He refused to be so restricted and expressed his desire to perform all of the Skycap functions. This refusal netted him a two hour suspension without pay and a poor merit evaluation, and was a factor in the denial of a merit increase shortly thereafter. Subsequent to this recalcitrance, Hill did, on various occasions totaling sixteen work days, assume Hart's position and work at the curbside station.[4]

On August 21, 1969, Hill filed a charge with the EEOC complaining basically of the suspension, the poor merit rating, and a loss of tips. After an EEOC investigation, it issued Findings of Fact to the effect that race was a factor in American's conduct toward Hill. On June 21, 1971, Hill received from the EEOC a notice of right to sue within thirty days based on its failure to achieve conciliation.

■ Hill first argues that the class action portion of his complaint, in which he purported to represent all blacks who are or might be Skycaps for American at San Antonio or elsewhere in the United States, should not have been dismissed. We disagree. At least with respect to the size of the purported class, the district court's determination of the existence *vel non* of a proper class is final unless abuse is shown. Johnson v. Georgia Highway Express, Inc., 5 Cir. 1969, 417 F.2d 1122; see Arkansas Education Association v. Board of Education, 8 Cir. 1971, 446 F.2d 763; Norwalk CORE v. Norwalk Redevelopment Agency, 2 Cir. 1968, 395 F.2d 920; Cypress v. Newport News General and Nonsectarian Hospital Association, 4 Cir. 1967, 375 F.2d 648.

■ In considering the San Antonio aspect of the class, the district court quite correctly found that the potential class of six members was not so numerous as to require class action treatment and that it was not shown that joinder of the members would be impracticable. *See* Foster v. Mobile County Hospital Board, 5 Cir. 1968, 398 F.2d 227.

■ We similarly perceive no error in the district court's conclusion that on these facts Hill's potential non-San Antonio area class was inappropriate and unmanageable as a class, and that he was an inadequate representative of the purported class. We are particularly persuaded that there is an absence of any substantial common questions of law or fact on the record before us. Class actions are permissible, indeed often preferable, in actions under Title VII if the requirements of Rule 23(a) and (b)(2), Fed.R.Civ.P. are satisfied, see Oatis v. Crown Zellerbach Corp., 5 Cir. 1968, 398 F.2d 496, but when no such satisfaction occurs, the class action portion of a complaint should be dismissed.

---

3. Because Hart's old rate of pay, $2.84 per hour, was greater than the service limit—as well as the maximum—for a skycap, he was required by American's regulations to take a cut in his per hour wage rate. The district court found that Hart did not accept tips while serving as a Skycap and that his $2.35 rate was an attempt to recognize this fact in the context of transferring jobs to a lower service grade.

4. Hart's employment with American was terminated in April 1970 as the result of a reduction in force at the San Antonio facility. No Skycap, white or black, since that time has been assigned the duties as the permanent curbside attendant.

Hill next argues that the district court erred in denying him damages. His primary contentions are: (1) that the curbside *system* was discriminatory in that he had to perform additional duties without additional pay; (2) that the transfer of Hart, the permanent curbside *attendant,* was discriminatory because Hart received $.15 per hour more from American than Hill did; (3) that Hill did not receive additional pay for the sixteen days he was assigned to and actually did perform Hart's duties; and (4) that his suspension, his poor merit evaluation, and the resultant failure to receive a pay raise were the fruits of previous discriminatory actions on American's part. We find no merit in any of these contentions.

Fundamental to our conclusion is the finding of fact by the district court that American did not discriminate against Hill. Despite our sensitivity to charges of discrimination, this finding is still entitled to the "clearly erroneous" protection on review afforded by Rule 52(a), Fed.R.Civ.P. Terrell v. Feldstein Co., 5 Cir. 1972, 468 F.2d 910; Austin v. Maxwell, 5 Cir. 1972, 456 F.2d 1237.

■ Our review of the record reveals certain facts, in addition to those set out above, found by the district court that weigh on our consideration of Hill's charges: (1) the duties added to a Skycap's job in 1966 were not foreign to the duties then performed by the six black Skycaps and Hill did not clearly demonstrate a loss of income as a result of performing them; (2) the new position filled by Hart was opposed and not actively sought by Hill, and it was only a part-time position for almost a year; (3) at all times relevant to this suit, Hill, because of his tip income, had a greater gross income than Hart did; and (4) the July 12, 1969, refusal to work unquestionably occurred and the disciplinary action taken was not, by itself, discriminatory. Taking all of these facts together, along with the rest of the complete record, we are left with no definite and firm conviction that the district court erred in entering judgment for American. *See* Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774.

Hill's final contention is that the district court erred in dismissing the portions of his complaint that alleged discrimination in vacation policy, testing, and pay increases. The district court concluded that these charges had not been presented to the EEOC and that they were not reasonably related to those which had been presented; as a result, the district court dismissed the charges for lack of jurisdiction. This was error.

■ ■ Hill brought this action in the district court under both Title VII and section 1981. This point was correctly alleged in all of Hill's pleadings and noted in the district court's findings. Consequently, even if we assume that none of these charges was even remotely related to those pressed before the EEOC, Hill still is entitled to pursue his completely independent remedy under section 1981 without first negotiating the EEOC administrative channels. Caldwell v. National Brewing Co., 5 Cir. 1971, 443 F.2d 1044, cert. denied, 1972, 405 U.S. 916, 92 S.Ct. 931, 30 L.Ed.2d 785; *see* Lee v. Southern Home Sites Corp., 5 Cir. 1971, 444 F.2d 143; Boudreaux v. Baton Rouge Marine Contracting Co., 5 Cir. 1971, 437 F.2d 1011; Sanders v. Dobbs Houses, Inc., 5 Cir. 1970, 431 F.2d 1097, cert. denied, 1971, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231. Therefore, the district court does have jurisdiction over these three claims of Hill and we reverse and remand for further proceedings with respect to these charges.[5]

Affirmed in part, and reversed and remanded in part.

---

5. Because the district court has jurisdiction under section 1981, it is unnecessary for us to decide whether the charges were reasonably related to those urged before the EEOC, *see* Sanchez v. Standard Brands, Inc., 5 Cir. 1970, 431 F.2d 455, or whether the fact that the acts complained of occurred after the EEOC complaint was filed has any significance, *see* Danner v. Phillips Petroleum Co., 5 Cir. 1971, 447 F.2d 159, 162, and Edwards v. North American Rockwell Corp., C.D. Cal.1968, 291 F.Supp. 199.