**Leo VEAZIE, Individually, and on behalf of all others similarly situated**

**v.**

**SOUTHERN GREYHOUND LINES, DIVISION OF GREYHOUND LINES, INC.**

**Civ. A. No. 72–2729.**

United States District Court,
E. D. Louisiana.

April 26, 1974.

Lynne Rothschild Stern, Nelson, Nelson, Garretson, Lombard & Stern, New Orleans, for plaintiff.

Washington Marshall, E.E.O.C., Washington, D. C., amicus curiae.

Breard Snellings, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., William F. Kirsch, Jr. and Maurice Wexler, Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., for defendant, Southern Greyhound Lines, Div. of Greyhound Lines, Inc.

Steven R. Plotkin, Law Offices of Steven R. Plotkin, New Orleans, La., for defendant, Service Employees International Union, Local 275.

C. Paul Barker, Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for defendant, Amalgamated Transit Union Div. 1174.

JACK M. GORDON, District Judge:

This is an action brought by a black resident of New Orleans, Louisiana, pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunities Act of 1972, 42 U.S.C. § 2000e–5 et seq., alleging that the defendant, a corporation, has engaged in racially discriminatory employment practices at its New Orleans facility. Plaintiff instituted this lawsuit on behalf of himself and all others similarly situated. Defendant now has moved in the alternative to dismiss the complaint, to strike portions of the complaint, to dismiss the class action, or to define and restrict the alleged class. Following substantial oral argument and briefing, the defendant's motions are ripe for adjudication.

A compendium of the pertinent facts initially should be stated. Respondent, Southern Greyhound Lines, Inc. (hereinafter referred to as "Greyhound") is engaged in the interstate carriage of passengers and freight and is an employer subject to the provisions of Title VII. The plaintiff, Leo Veazie, was employed by Greyhound as a porter at its bus station in New Orleans from December 4, 1951, until his discharge on December 6,

1967. He was rehired by the defendant on April 19, 1968, and has worked continuously from that date until the present for the defendant Greyhound. Approximately one month after his discharge Mr. Veazie propitiously filed a charge with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC" or "Commission") maintaining that he had been discharged due to his race,[1] and, concomitantly, that the promotion and seniority policies of Greyhound are racially discriminatory. More than four months later, on April 21, 1968, the EEOC served a copy of Mr. Veazie's charge upon Greyhound. Preceded by an examination and investigation of plaintiff's charge, the EEOC rendered a decision on December 30, 1970; the Commission concluded that there was not reasonable cause to believe that Mr. Veazie was discharged because of his race, although the Commission concluded that Greyhound maintained racially segregated dressing rooms in violation of Title VII. The defendant, Greyhound, ostensibly assumed that the Veazie charge had achieved final resolution by the EEOC at this juncture,[2] until Greyhound received, to its surprise, and perhaps chagrin, a ruling on reconsideration and revised decision, dated June 2, 1971, from the EEOC. In this later opinion, the EEOC adopted that portion of its first decision concerning segregated dressing areas, but withdrew that section relating to Mr. Veazie's unlawful discharge. In the amended decision, the EEOC determined that there was reasonable cause to believe that Greyhound had violated the provisions of Title VII of the Civil Rights Act in several respects: (1) dis-

charging Mr. Veazie because of his race; (2) discriminating against black employees in its hiring, promotion, and transfer policies; and (3) maintaining racially segregated job classifications and facilities. In contradistinction to the notice procedure implemented prior to the rendition of the first EEOC opinion, the EEOC totally failed to advise Greyhound that this investigation was being reopened and likewise failed to attempt conciliation efforts before it forwarded the statutorily required right to sue letter to the plaintiff, Mr. Veazie.

Defendant bottoms its motion to dismiss on the alleged failure of the EEOC to notify the respondent Greyhound as soon as the EEOC decided to reconsider its original determination; if this averment is accurate, argues Greyhound, then the EEOC clearly has violated one of its own regulations, namely, 29 C.F.R. § 1601.19(b), said rule directing that the Commission "shall promptly notify the charging party, the respondent, and, [if appropriate], the person aggrieved, if known, of its intention to reconsider its determination and of its subsequent decision on reconsideration." Greyhound contends that statutory non-compliance has a two-fold effect: first, since notice to the employer by the EEOC of the latter's intention to reconsider its determination represents a jurisdictional prerequisite to the filing of a lawsuit, the litigation sub judice is barred. Second, the notice omission amounts to a deprivation of Greyhound's right of procedural due process, as guaranteed by the Fifth Amendment to the United States Constitution, inasmuch as a possible modification of the Commission's earlier opinion, under these condi-

---

1. The complaint filed by the plaintiff, Mr. Veazie, with the EEOC reads as follows:

    I was asked to work overtime, I stated I couldn't work because of my house wasn't secured properly and my wife was ill, that was my first refusal to work overtime in (16 years). I was fired because I refused to work overtime. Action had never been taken against white EMP. for refusing to work overtime. I think I was discharged because of my Race.

2. Over one and one-half years before the EEOC opinion was issued, Mr. Veazie was reinstated to his former position in the employ of Greyhound. This reinstatement was achieved through Mr. Veazie's union grievance procedure inasmuch as Mr. Veazie's supervisor, at the time of discharge, presumably violated the collective bargaining agreement that prohibited coerced overtime.

tions, substantially would affect the rights of Greyhound.

This Court strongly believes that Greyhound's position expresses a valid concern. The clear duty of the EEOC to notify promptly a respondent prior to initiating a ruling on reconsideration is expressly spelled out by its own regulation. *See,* 29 C.F.R. § 1601.19(b). Moreover, to countenance, much less provide judicial approbation on an important, undisputed procedural deficiency by the EEOC is incongruous with the conciliatory purpose of the EEOC. In addition to thwarting the voluntary conciliation of employment discrimination charges, there appears no rhyme or reason in the surreptitious concealment by the EEOC of its decision to re-evaluate. Nor has the EEOC suggested any excuse for its malfeasance. Greyhound understandably felt that the Veazie charge had been laid to rest, when the Commission, in December, 1970, concluded that no reasonable cause existed to support the allegation that Mr. Veazie's discharge had been racially motivated; more than six months after the Commission failed to unearth any racial discrimination against Mr. Veazie, the EEOC, sua sponte, withdrew its earlier decision concerning unlawful discharge, and, executing a one hundred and eighty degree evaluative turn, decided that Mr. Veazie wrongfully had been discharged. The interim between the EEOC's issuance of the original decision and its ruling on reconsideration seems unduly lengthy, but when coupled with the Commission's failure to notify Greyhound that the Veazie charge had been reactivated from dormancy, the entire administrative procedure smacks of such bald one-sidedness on behalf of the charging party that dismissal borders on being judicially obligatory.

■ Despite substantial reservation predicated on the Court's aforementioned remarks, however, this Court nevertheless must deny the motion to dismiss. The jurisprudence under Title VII contains persuasive instances where the courts have refused to penalize the plaintiff for the acts or omissions of the EEOC. *See, e. g.,* Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Washington v. T. G. & Y. Stores Co., 324 F.Supp. 849 (W.D.La.1971); Johnson v. ITT—Thompson Industries, Inc., 323 F.Supp. 1258 (N.D.Miss.1971). The plaintiff should not be denied his opportunity to achieve judicial redress because the EEOC conducted its inquiry in a procedurally deficient fashion. This Court is constrained to agree with the holding in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973), to the effect that there are only two jurisdictional prerequisites to maintenance of a Title VII suit by an individual: (1) the timely filing of a charge of employment discrimination with the Commission, and, (2) the actual filing of suit by a plaintiff within the statutory time period upon receipt of a right to sue letter from the EEOC. 42 U.S.C. § 2000e–5(c) and (e). It is apparent, therefore, that the absence of notice by the EEOC to respondent Greyhound is not a jurisdictional prerequisite for a civil action by an aggrieved employee. This supposition receives additional support from a body of cases where respondents advanced closely analogous arguments to those urged by Greyhound involving the question of whether conciliatory efforts are jurisdictional prerequisites to litigation, and the courts' rejoinder that conciliation attempts do not constitute such a condition precedent. *See,* Beverly v. Lone Star Lead Construction Co., 437 F.2d 1136 (5th Cir. 1971); Dent v. St. Louis-San Francisco Railway Co., 406 F.2d 399 (5th Cir. 1969); Johnson v. ITT-Thompson Industries, Inc., *supra;* Carr v. Conoco Plastics, Inc., 295 F.Supp. 1281 (N.D. Miss.1969). *But see,* EEOC v. Westvaco, 372 F.Supp. 985 (D.Md.1974); EEOC v. Guaranty Savings & Loan Ass'n, 369 F. Supp. 36 (N.D.Ala.1973); EEOC v. Firestone Tire & Rubber Co., 366 F. Supp. 273 (D.Md.1973); EEOC v. Western Electric Co., Inc., 364 F.Supp. 188 (D.Md.1973).

Since the plaintiff has satisfied the bipartite suit requirements enunciated in *McDonnell Douglas,* this Court could not demand that plaintiff shoulder the consequences of blatant statutory dereliction on the part of the EEOC.

■ Greyhound alternatively has raised a constitutional question as to the merits of this complaint, to-wit: lack of notification to the employer inherently violates its due process protection afforded through the Fifth Amendment. Since the EEOC proceedings purportedly are not adversarial in form or substance and not binding on the subsequent juridical action,[3] then the de novo nature of a lawsuit undermines the contention of constitutional deprivation advanced by defendant. *See,* Smith v. Universal Services, Inc., 454 F.2d 154 (5th Cir. 1972); King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968).

■ Defendant additionally has moved to strike from the amended complaint the EEOC findings as set forth in its original and amended opinions; however, a recently filed second amended complaint has negated this issue to the parties' satisfaction. Greyhound still urges its motion to strike all allegations of plaintiff's complaint relating to discriminatory practices, save plaintiff's allegedly unlawful discharge, as well as its motion to strike plaintiff's allegations predicated on causes of action pursuant to Title 42, United States Code, Section 1981, a statutory derivative of the Civil Rights Act of 1866. Motions to strike under Rule 12(f) of the Federal Rules of Civil Procedure are not favored, and a portion of the complaint should not be stricken unless the allegations are prejudicial to the defendant or immaterial to the lawsuit. It is a well accepted tenet in the Fifth Circuit that the pale of allegations in a Title VII case pending in federal court is not limited to those grievances contained in the preceding charge filed with the EEOC. Indicative of this jurisprudential approach is Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970), where the court observed that the causes of action in a Title VII complaint are circumscribed only by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." The EEOC investigation of the defendant, Greyhound's hiring, promotional, and transfer policies toward black employees as well as the alleged maintenance of racially segregated dressing facilities is reasonably relevant to the plaintiff, Veazie's contention that he was discharged because of racial discrimination. *See,* Oubichon v. North American Rockwell Corp., 482 F.2d 569 (9th Cir. 1973); Danner v. Phillips Petroleum Co., 447 F.2d 159 (5th Cir. 1971); Van Hoomissen v. Xerox Corp., 368 F.Supp. 829 (N.D.Cal.1973); Johnson v. ITT—Thompson Industries, Inc., *supra;* King v. Georgia Power Co., *supra.* *See generally,* Parliament House Motor Hotel v. EEOC, 444 F.2d 1335 (5th Cir. 1971). At this juncture, post EEOC investigation, any attempt at winnowing down the present complaint only would result in duplicitous litigation— and a waste of time and money for all concerned parties.

■ Defendant next questions the propriety of coupling a Title VII cause

---

3. The Court is strongly persuaded in its resolution of the due process argument by the defendant's right to an independent de novo trial. Cognizant of instances where the Court of Appeals has endorsed the EEOC findings as admissible and probative evidence, *see, e. g.,* Smith v. Universal Services, Inc., 454 F.2d at 157, this Court, though not intending to issue an advisory opinion, feels it imperative to state now that should the plaintiff attempt to introduce these EEOC findings garnered in an investigation sans notification, then the Court would be inclined to review defendant's constitutional attack under a more favorable perspective. Surely, to do otherwise, would impose a harsh result on the defendant, and, of more important concern, would remove from the EEOC any incentive to adhere to procedural fair play. *See generally,* Cox v. Babock & Wilson Co., 471 F.2d 13 (4th Cir. 1972); Smith v. Universal Services, Inc., *supra,* rehearing en banc denied, 454 F.2d at 160 (Dyer, J., dissenting). *Cf.* Gillin v. Federal Paper Bd. Co., 479 F.2d 97 (2nd Cir. 1973).

of action with a cause of action in accordance with 42 U.S.C. § 1981. The Fifth Circuit explicitly has rejected the view that the enactment of Title VII preempted or precluded whatever recourse for racial employment discrimination that previously existed under § 1981. *See*, Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011 (5th Cir. 1971); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970). *Accord*, Waters v. Wisconsin Steel Works of Internat'l Harvester Co., 427 F.2d 476 (7th Cir. 1970). *Contra*, Smith v. North American Rockwell Corp., 50 F.R.D. 515 (N.D.Okla.1970). The courts, nevertheless, have acknowledged and followed the strong congressional dogma favoring the use of Title VII, particularly the conciliation phrase contained therein. *See, e. g.*, Howard v. Lockheed-Georgia Co., 372 F.Supp. 854 (N.D.Ga.1974).

In a recent decision, Hill v. American Airlines, Inc., 479 F.2d 1057 (5th Cir. 1973), the court was faced with a similar legal enigma. The plaintiff in *Hill* initially pursued relief for alleged discrimination charges in conformity with Title VII and its statutory machinery, and, having been unsuccessful at the administrative level, he brought suit under both Title VII and § 1981. The district court concluded that some of Hill's charges were not reasonably related to those which previously had been presented to the EEOC, and, accordingly, the district court dismissed those charges for lack of jurisdiction. Reversing the lower court, the Fifth Circuit, assuming in arguendo that the dismissed charges were unrelated to the processed charges, held that the plaintiff still should be entitled to pursue a completely independent remedy under § 1981 without first exhausting his remedies under Title VII. In the instant case, the Court is of the opinion that the causes of action in the complaint satisfy the "reasonably related" standard as opined in *Sanchez;* on the possibility that certain allegations in the complaint lack a nexus with the EEOC investigation, the Court, adhering to the *Hill* rationale, would be required to maintain jurisdiction under § 1981.[4]

■ Greyhound's final motion in this series seeks an order dismissing the class aspect of this action or alternatively, requiring plaintiff to define the class which he allegedly represents. Before the Court can determine if class action is appropriate, certain important questions must be answered; for example, what effect, if any, does the existence of dual unions and respective seniority lists have on the viability of the class plaintiff purports to represent? Similarly, can the plaintiff be a state-wide representative in this lawsuit when the defendant's internal operations bifurcate the state? Albeit class actions generally are preferable in suits under Title VII, in the interest of justice and judicial efficiency, however, the Court will posit in abeyance such a determination on class relief for several reasons. First, the parties, when the Court last entertained oral argument on October 31, 1973, indicated to the Court that amicable resolution of this issue would be extremely probable as soon as the Court rendered its decision on the aforementioned disputes. Second, the defendant unions have submitted summary judgment motions that are directly intertwined with the scope of any class. Third, as stated above, certain critical factual issues yet have been crystallized so as to permit definition of a class as dictated by Federal Rules of Civil Procedure Rule 23(a) and (b)(2). Accordingly,

It is ordered that the motion to dismiss filed by defendant, Greyhound is hereby denied;

It is further ordered that the motions to strike filed by defendant, Greyhound are hereby denied;

It is further ordered that the Court will reserve judgment on the motion

---

4. The defendant admits that plaintiff's counsel, appointed by the Court to pursue a Title VII suit, can frame causes of action founded on § 1981 contingent on the Court's conclusion that plaintiff can use this statutory vehicle.

governing the class action issue until the parties either can resolve it themselves or clearly present all the requisite factual criteria so the Court can make a decision in compliance with Rule 23, Federal Rules of Civil Procedure.