Paul NATON, and the class of persons he represents, Plaintiff,

v.

The BANK OF CALIFORNIA, Defendant.

No. C–76–944 WHO.

United States District Court, N. D. California.

Oct. 20, 1976.

---

Act. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Fair Labor Standards Act of 1938, § 1 et seq. as amended 29 U.S.C.A. § 201 et seq.

---

Michael Gilfix, Gilfix & Morse, Palo Alto, Cal., Arthur Leinwohl, Los Altos, Cal., Ralph S. Lee, Mountain View, Cal., Mark I. Schickman, San Francisco, Cal., for plaintiff.

Paul, Hastings & Janofsky, Dennis H. Vaughn, Paul Grossman, Howard C. Hay, Mark W. Atkinson, Los Angeles, Cal., for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Paul Naton, a trust officer of the defendant, The Bank of California, National Association (the Bank), was discharged by the Bank at the age of sixty, and brings this action against the Bank under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., alleging his discharge was caused solely on account of his age in violation of 29 U.S.C. § 623(a)(1).[1] He seeks to maintain this suit as a Rule 23 class action on his own behalf and on behalf of all other persons between the ages of forty and sixty-five who were terminated by the Bank in or about January, 1975.[2] This Court has jurisdiction pursuant to 29 U.S.C. § 626(c).[3]

■ The Bank has moved to strike the class allegations contained in paragraph V and other references to individuals other than plaintiff from the First Amended Complaint.[4] The only issue before the

1. 29 U.S.C. § 623(a)(1) provides that it is unlawful for an employer:
   "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;"
   The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., protects individuals between the ages of forty and sixty-five. 29 U.S.C. § 631.

2. Specifically, plaintiff seeks to maintain this suit pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, which provide as follows:
   "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   \* \* \* \* \* \*
   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole \* \* \*."

3. 29 U.S.C. § 626(c) provides:
   "Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary [of Labor] to enforce the right of such employee under this chapter."

4. Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure which provides:
   "Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
   Such motions are disfavored by the courts, and should not be granted unless it is clear that the matter to be stricken can have no possible bearing upon the subject matter of the litigation. 2A J. Moore, Federal Practice ¶ 12.21[2] at 2429 (2d ed. 1975). Rule 12(f) motions are particularly disfavored with respect to class allegations in employment discrimination suits. See, Veazie v. Southern Greyhound Lines, Div. of Grey, L., Inc., 374 F.Supp. 811, 816 (E.D.La. 1974). The Bank's motion is, therefore, granted only with respect to paragraph V of the First Amended Complaint, since it is not clear at this juncture that the other references to individuals other than plaintiff can have no possible bearing on this lawsuit.

Court is whether individuals may utilize Rule 23 when bringing a class action under the ADEA. This question is one of first impression in this Circuit.

■ For the reasons set forth herein, I find that Rule 23 is not available in class suits brought under the ADEA.

## I.

The material facts as set forth in the First Amended Complaint are as follows: Plaintiff was employed by the Bank as a Class A Trust Officer on November 1, 1965. At the time he was under the belief that he would be so employed until he reached the age of sixty-five, the normal retirement age of the Bank's employees. He alleges that at all times he performed his job to the satisfaction of his employer, but was nevertheless prematurely terminated on January 17, 1975, at the age of sixty.[5] Plaintiff further claims that approximately one hundred and sixty employees were terminated by the Bank in January, 1975, and that a disproportionate number of those employees were between the ages of forty and sixty-five.

Shortly after his termination, plaintiff expressed a desire to be transferred to a position requiring his skills and experience at a different branch of the Bank, but the position was filled by an individual under the age of forty. He has since been unable to secure employment with the Bank or any other institution in a position similar to that which he held with the Bank.

**5.** More correctly, plaintiff was on leave of absence without pay from May, 1975, to January 2, 1976. During that time he was never recalled for employment by the Bank. It is not clear from the complaint what his status was during the period January to May, 1975.

**6.** The emphasized portion was added to the Fair Labor Standards Act (FLSA) by the Portal to Portal Act of 1947, § 5(a), 61 Stat. 87, 88, 29 U.S.C. § 216(b), in order to curtail available remedies in the face of the potentially staggering liability of private industry and the government resulting from the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed.2d 1515 (1946), *rehearing denied,* 329 U.S. 822, 67 S.Ct.

Having complied with the applicable jurisdictional prerequisites, plaintiff filed his action in this Court. *See,* 29 U.S.C. §§ 626(d), 633(b); California Labor Code §§ 1420.1, 1422. Thereafter, plaintiff filed an amended complaint and the Bank timely moved to strike the class action allegations from the First Amended Complaint. Following substantial briefing and oral argument, the Bank's motion is ripe for adjudication.

## II.

Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that:

"The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title * * *."

The provisions thus incorporated are provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.,* and include Section 16(b) of the FLSA, 29 U.S.C. § 216(b), which provides in pertinent part:

"* * * Action to recover such liability may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *No employee shall be a party plaintiff to such an action unless he gives his consent in writing to become such a party and such . . . action is brought."* (Emphasis added.)[6]

25, 91 L.Ed. 699 (1946). In *Anderson,* the Court held that employees were owed compensation for in-plant activities preliminary and subsequent to actual work. In the six months following the decision, 1,913 suits were filed under the FLSA seeking a total of $5,785,204,-606. *See,* H.R.Rep.No.71, 80th Cong., 1st Sess. 4 (1947). Since the addition of the consent requirement, the courts, whether or not dealing with claims for pre-work or post-work compensation, have consistently held that in FLSA actions only those employees who have filed written consents to become parties plaintiff in the court in which the action is brought may be represented. *Sims v. Parke Davis & Co.,* 334 F.Supp. 774, 780–781 (E.D.Mich.1971), *aff'd,* 453 F.2d 1259 (6th Cir. 1971), *cert. denied,* 405

The majority of cases, including the only Circuit Court opinion, addressing the issue now before the Court have ruled that use of Rule 23 is inappropriate because of the FLSA requirements that timely notice of intent to sue be given the Secretary of Labor and that a consent be filed with the court by each "similarly situated" party. *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975), *aff'g per curiam*, 64 F.R.D. 96 (N.D.Ga.1974); *Price v. Maryland Casualty Co.*, 62 F.R.D. 614, 615 (S.D.Miss. 1972); *Cooke v. Reynolds Metal Co.*, 65 F.R.D. 539, 540 (E.D.Va.1975); *Burgett v. Cudahy Co.*, 361 F.Supp. 617, 622 (D.Kan. 1973); *Hull v. Continental Oil Co.*, 58 F.R.D. 636, 637 (S.D.Tex.1973); *McGinley v. Burroughs Corp.*, 407 F.Supp. 903, 910–911 (E.D.Pa.1975). In reaching this conclusion, the Fifth Circuit noted:

> "There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit.[7] Under § 16(b) of FLSA, on the

[7] More correctly, class members may opt out only when the action is maintainable under subdivision (b)(3) of Rule 23. When either subdivision (b)(1) or (b)(2) applies, the rule does not allow a class member to avoid the effect of judgment by disassociating himself

U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972); *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). *See also*, "Notes of Advisory Committee on Rules," Fed.R.Civ.P. 23, which notes in 28 U.S.C.A. at 300:

"[t]he present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended [by the 1966 amendments]."

**7.** The other cases relied upon by plaintiff inapposite for they do not reach the issue before this Court. The district court in *Mistretta v. Sandia Corp.*, 12 FEP 1225, 10 EPD ¶ 10,279 (D.N.M.1975), stated that decisions supporting the unavailability of Rule 23 were "more persuasive". *Id.*, 10 EPD at 5165. The court nevertheless went through a Rule 23 analysis, noting:

from the suit." (Citation omitted.) *LaChapelle v. Owens-Illinois, Inc., supra*, 513 F.2d at 288.

> other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent. [Citation omitted.]

The Court determined that Congress' incorporation of Section 216(b) into the ADEA precluded the application of Rule 23 to age discrimination suits. It held that the language of the statute unambiguously compelled the conclusion that only "opt-in" type class actions may be utilized under the ADEA. The Court agrees with this result.

### III.

As in *LaChapelle*, plaintiff here nevertheless urges that an ADEA action is not an FLSA action and, by reference to the legislative history, that Congress could not have intended to make Rule 23 unavailable in ADEA suits. He argues that the ADEA's purposes and terms are virtually identical to those of Title VII of the Civil Rights Act of 1964, except that "age" has been substituted for "race, color, religion, sex, or national origin", and that to exclude Rule 23 from the ADEA's arsenal would seriously undermine the broad remedial purposes of the ADEA.

A similar argument was successfully made in *Blankenship v. Ralston Purina Co.*, 62 F.R.D. 35 (N.D.Ga.1973).[7] In Count I of

> "Because this appears to be a critical interlocutory ruling in this action, it may be advisable to consider whether Rule 23(a) and (b) have been satisfied before determining if the Rule is available." *Id.*

It determined that the Rule's requirements had not been met and, therefore, ruled that "the action should proceed in accordance with § 216 and certification pursuant to Rule 23 will be denied." *Id.* at 5166.

In *Bishop v. Jelleff Associates, Inc.*, 4 FEP 1262, 5 EPD ¶ 7995 (D.D.C.1972), and *Gebhard v. GAF Corp.*, 59 F.R.D. 504 (D.D.C.1973), the courts found only that the preliminary requirements of Rule 23 had not been met. The issue of the availability of Rule 23 in ADEA suits was neither discussed nor apparently even raised.

his complaint, Blankenship alleged that defendant engaged in a broad practice of discrimination against the employment of people between the ages of forty and sixty-five in violation of the ADEA. He, therefore, sought to represent all others between forty and sixty-five in a Rule 23 class action. The court compared the FLSA, Title VII, and the ADEA and concluded that the ADEA was more similar in purpose and terms to Title VII than to the FLSA. Persuaded by the federal courts' liberal application of Rule 23 in Title VII suits (*see, Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969)), it determined that Section 216(b) should not be literally construed in ADEA actions. It, therefore, held that the consent requirement of Section 216(b) is met when the representatives of the class file their consents.

However, the Fifth Circuit subsequently rejected this policy argument and impliedly overruled *Blankenship*,[8] noting that the clear and unambiguous statutory language compelled the determination that Rule 23 is not available in ADEA suits:

"The statutory language of ADEA § 7(b) is clear; likewise the language of FLSA § 16(b) is unambiguous. 'We are recused from immersion in the sea of legislative history by the general principle that we must not refer to legislative history if the statutory language is clear.' [Citation omitted.] Rather, we must apply the law as it has been written." *LaChapelle v.*

*Owens-Illinois, Inc., supra*, 513 F.2d at 289.

■ While the Court agrees with the result reached by the Fifth Circuit, it nevertheless finds that reference to the legislative history is instructive on this issue. The ADEA is a separate act of Congress—not an amendment to the FLSA.[9] However, the legislative history does not support plaintiff's suggestion that had Congress foreseen the conflict between Section 216(b) and Rule 23 it would have acted differently than it did with respect to the ADEA's enforcement provisions.

The legislative history is silent with respect to the availability of Rule 23 in ADEA suits and contains no meaningful discussion on the consent requirement of Section 216(b). It does, however, reveal that Congress deliberately chose FLSA enforcement procedures over those contained in the National Labor Relations Act or Title VII of the Civil Rights Act of 1964. *See, Hearings on H.R.4221 Before General Subcomm. on Labor of the House Comm. on Education & Labor*, 90th Cong., 1st Sess. 1 (1967) (remarks of Messrs. Finigan, Harmon, and Meiklejohn, and Representatives Price and Pucinski); *Hearings on S. 830 and S. 788 Before Subcomm. on Labor of the Senate Comm. on Labor & Public Welfare*, 90th Cong., 1st Sess. 29 (1967) (remarks of Senator Javits).[10] As recently observed in *McGinley v. Burroughs Corp., supra*, 407 F.Supp. at 911, holding that Rule 23 is independent of the statutory suit au-

---

**8.** *Blankenship v. Ralston Purina Co.*, 62 F.R.D. 35 (N.D.Ga.1973), was originally appealed, but the parties obtained a dismissal before being heard by the Court of Appeals. Moreover, *Blankenship*, which arose in the same district court as *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975), aff'g per curiam, 64 F.R.D. 96 (N.D.Ga.1974), was explicitly rejected by that court. *Id.* at 64 F.R.D. 97.

**9.** The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, is thus distinguishable from the Equal Pay Act of 1964, 29 U.S.C. § 206(d), which was enacted as an amendment to the Fair Labor Standards Act. It is nevertheless noted that the Equal Pay Act is also governed by the provisions of Section 216(b), and that the courts have consistently

held that a Rule 23 class action is not available in Equal Pay Act cases. *Westerlund v. Fireman's Fund Ins. Co.*, 11 FEP 744, 744–745, 10 EPD ¶ 10,456 (N.D.Cal.1975); *Hunter v. United Air Lines, Inc.*, 10 FEP 787, 787–788, 10 EPD ¶ 10,457 (N.D.Cal.1975); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48, 49 (S.D.N.Y. 1972).

**10.** The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, was based on S. 830 and H.R. 13054. H.R. 13054 was the clean bill resulting from hearings on H.R. 4221. 1967 U.S.Code Cong. and Adm.News p. 2215. The Senate Bill was passed in lieu of the House Bill after substituting for its language the text of the House Bill. *Id.* at 2213.

thorized by Section 216(b) and, therefore, unavailable in ADEA suits:

> "The legislative history of the Age Discrimination Act clearly establishes that the Act is to be enforced in accordance with the procedures of the Fair Labor Standards Act. Congress at the time the Act was adopted was well aware of Rule 23 of the Federal Rules. If Congress had wished to adopt the Rule 23 enforcement technique for the Age Discrimination Act, it would not have explicitly stated that the Act was to be enforced in accordance with the Fair Labor Standards Act."

Moreover, the House hearings disclose that the preference for FLSA enforcement procedures was in large part based upon Congress' determination that discrimination in employment on the basis of age is separate and distinct from that based on race, color, religion, sex, or national origin.

> "Age discrimination is not the same as the insidious discrimination based on race or creed prejudices and bigotry. Racial or religious discrimination results in nonemployment because of feelings about a person entirely unrelated to his ability to do a job. This is hardly a problem for the older job seeker." *Hearings on H.R. 4221, supra,* at 449 (remarks of Representative Burke).

Thus, Representative Dent, the Chairman of the House Subcommittee, concluded:

> " * * * [T]his member of this committee does not want this legislation to be combined with any of the existing antidiscrimination programs which are a different nature. I don't want it confused with any other kind of discrimination. It is distinct and separate discrimination and should be recognized as such." *Hearings on H.R. 4221, supra,* at 97.

As a result, Congress deliberately settled upon certain of the procedural mechanisms and enforcement devices contained in the FLSA which would afford more expeditious and individual treatment of claims of age discrimination than those afforded by either the National Labor Relations Act or Title VII. *See,* remarks of Peter J. Pestillo, La-

bor Counsel, Chamber of Commerce of the United States, *Hearings on H.R. 4221, supra,* at 67. As Senator Javits, one of the chief proponents of the FLSA enforcement scheme, summed up during the Senate debates:

> "The enforcement techniques provided by S. 830 are directly analogous to those available under the Fair Labor Standards Act; in fact, S.830 incorporates by reference, to the greatest extent possible, the provisions of the Fair Labor Standards Act.
>
> \*   \*   \*   \*   \*   \*
>
> We now have the enforcement plan which I think is best adapted to carry out this age-discrimination-in-employment ban with the least overanxiety or difficulty on the part of American business, and with complete fairness to the workers. I think this is one of the most important aspects of the bill." 113 Cong.Rec. 31254 (1967).

Finally, the ADEA enforcement provisions themselves reflect that Congress did not intend to follow the enforcement procedures available under Title VII. For example, enforcement of the ADEA is entrusted to the Secretary of Labor in accordance with the applicable provisions of the FLSA, whereas enforcement of Title VII is entrusted to an entirely separate agency, the Equal Employment Opportunity Commission; the ADEA's jurisdictional notice and filing requirements differ from those contained in Title VII; and, most significantly, the ADEA specifically incorporates a form of "opt-in" class suit whereas Title VII does not.

It is true, as plaintiff maintains, that in general terms the ADEA is similar to Title VII. However, the legislative history and the statutory language make clear that Congress intended to and did provide distinct enforcement procedures for what it viewed as a unique form of employment discrimination. The general similarity between the ADEA and Title VII is an insufficient basis on which to overlook the specific "opt-in" and consent provisions delib-

erately incorporated by Congress into the ADEA.[11]

Accordingly, the Court holds that Rule 23 is not available in ADEA suits and, therefore, orders that paragraph V be stricken from the First Amended Complaint. Those individuals whom plaintiff claims to represent shall have thirty (30) days within which to file with the Court their consents to be represented. The Court reserves ruling on the Bank's motion with respect to other references in the First Amended Complaint to others than plaintiff until after the expiration of the thirty-day period.

---

**11.** The Court recognizes that the addition to Section 216(b) of the consent requirement by the Portal to Portal Act was motivated by considerations which are not present here. *See,* footnote 6, *supra.* The Court cannot, however, ignore the scalpel-like precision with which Congress excised Section 216(b), leaving behind subsection (a), Section 211(b), leaving behind subsections (a), (c), and (d), and Section 217 from Title 29 for incorporation into the Age Discrimination in Employment Act. Nor can the Court assume that Congress was unaware of Rule 23 or of its wide acceptance and use in Title VII discrimination suits. Indeed, the legislative history makes clear that Congress was fully aware of how Title VII suits are conducted.

In light of the national priority which Congress has given the eradication of employment discrimination and the proven effectiveness of Rule 23 in pursuit of that goal, perhaps Congress should reconsider the form of class action it has authorized for use in age discrimination suits. However, until it does so the Court is constrained to apply the law as written and explained by Congress.