Pauline **DANNER**, Petitioner-Appellee,

v.

**PHILLIPS PETROLEUM CO.,**
Respondent-Appellant.

No. 30267.

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1971.

Rehearing and Rehearing En Banc
Denied Nov. 17, 1971.

Mrs. Pauline Danner began working for Phillips Petroleum in March 1957. She was discharged by the company in January 1967. During the ten-year period she was employed at Phillips, Mrs. Danner performed the following tasks: (1) Testing plant water; (2) mixing chemicals for the water treatment; (3) cleaning the spark plugs for the plant engines; (4) doing the regular production figuring; (5) keeping the oil reports and the engine reports; (6) typing up the accident reports; (7) preparing and keeping up with the time sheets; (8) drawing diagrams and making the reports of leaks occurring in the field; (9) answering the telephone; and (10) cleaning the restrooms, washing the walls and woodwork, and burning the trash. The label Phillips placed on this conglomerate of tasks assigned to Mrs. Danner was "plant clerk."

The trial court found, and the Record supports the finding, that Mrs. Danner had a high employee rating. Although Phillips claims that Mrs. Danner's job was eliminated, the trial court found that her job was not eliminated. The trial court's finding is supported by the Record, which reveals that Mrs. Danner's duties continued to be performed by four utility men, or roustabouts, in the plant.

Although Mrs. Danner had been working for Phillips for almost ten years when she was discharged, she had no seniority rights and no bidding or "bumping" rights that would have enabled her to assert any rights to another job with Phillips. The trial court found, and the evidence on this point is uncontradicted, that none of the female employees at Phillips had seniority or bidding rights. Phillips claims that Mrs. Danner was discharged as part of an economy measure, and there is nothing in the Record to contradict this claim. According to Phillips' own witness, however, the reason Phillips discharged Mrs. Danner

---

Joe V. Peacock, Odessa, Tex., W. B. Browder, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, Tex., for respondent-appellant.

Bob Hoblit, Burnett & Childs, Odessa, Tex., for petitioner-appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

In this sex discrimination case, Phillips Petroleum appeals from the judgment of the court below holding that Phillips' discharge of Mrs. Pauline Danner, the plaintiff below, was an unfair employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.[1]

---

1. 42 U.S.C.A. § 2000e–2 provides, in pertinent part, that

   (1) It shall be an unlawful employment practice for an employer—

to fail or refuse to hire or to discharge any individual, or otherwise to discrim-

inate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

rather than some other employee in its economy move was that Mrs. Danner had no seniority or bumping privileges, and therefore could not assert any rights to another position with Phillips [Appendix, p. 99]. Had Phillips sought to discharge any of the men who replaced Mrs. Danner, the men would have been able to assert their seniority and bidding rights. On these facts, the trial court concluded that Mrs. Danner suffered sex discrimination.

### I. *Jurisdiction*

Phillips' first contention is that this Court lacks jurisdiction over Mrs. Danner's claim because the EEOC, where Mrs. Danner first filed her discrimination charge against Phillips, has made no attempt to obtain voluntary compliance or conciliation under Title VII. The EEOC did make an investigation of Mrs. Danner's charge, and it determined that reasonable cause existed to believe that an unlawful employment practice within the meaning of Title VII had been committed.[2] Subsequently, the EEOC notified Mrs. Danner that she might bring a civil action against Phillips. The EEOC apparently made no effort to conciliate with Phillips, however.

■ Although we agree with Phillips that one purpose of Title VII is to encourage voluntary compliance, its contention that an EEOC effort to conciliate is a jurisdictional prerequisite to a Title VII action borders on being frivolous. It is now too well settled to dis-cuss that no EEOC effort to conciliate is required before a federal court may entertain a Title VII action. *See* Miller v. International Paper Co., 5th Cir. 1969, 408 F.2d 283, 288–291, and the cases cited therein. *Miller* holds that "an effort to conciliate by the EEOC is not *in any sense* a condition precedent to the charging party's right to seek judicial consideration of his grievance." 408 F.2d at 291 (emphasis added).

### II. *Scope of Mrs. Danner's Charge*

Phillips' second contention is that the charge Mrs. Danner originally filed with the EEOC was limited to a complaint that she was fired, and that a judicial inquiry into her complaint may not extend beyond the scope of that original charge into matters of seniority and bidding rights. In her charge with the EEOC, Mrs. Danner complained simply that "they took a young roustabout and gave him my job and laid me off. Therefore due to the fact that my position was not eliminated, just taken from me and given to a man, I feel that I have been mistreated and damaged."

■ We find this statement quite ample to support the judgment of the district court. Mrs. Danner is not a lawyer. The EEOC form she filled out was a simple form, allowing only a small space for her to state her complaint, and calling for only a brief factual summary. The courts have consistently held that the charges upon which complaints of discrimination are based should be con-

---

2. Subsequent to the date this case was submitted, Phillips filed with this Court a letter from the EEOC indicating that the EEOC has reconsidered its original determination that reasonable cause existed to believe that an unlawful employment practice had been committed and concluded that such determination was based on a material error of fact and therefore must be withdrawn. Phillips asserts that this letter constitutes cause for reversing the judgment of the district court and ordering Mrs. Danner's complaint dismissed. We have considered the EEOC letter along with the other evidence in this case. We note that the material mistake of fact committed by the EEOC in its investiga-tion had no bearing on the trial court's judgment. While it is a jurisdictional prerequisite that a complainant file a charge with the EEOC before bringing a Title VII action, Stebbins v. Nationwide Mut. Ins. Co., 4th Cir. 1967, 382 F.2d 267, cert. denied, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968), it is now well settled that a finding of reasonable cause by the EEOC is *not* jurisdictional prerequisite to filing suit under Title VII. Beverly v. Lone Star Lead Const. Corp., 5th Cir. 1971, 437 F.2d 1136; Fekete v. United States Steel Corp., 3d Cir. 1970, 424 F.2d 331; Grimm v. Westinghouse Elec. Corp., N.D.Calif.1969, 300 F.Supp. 984.

strued liberally. The reason courts treat unfair labor practice charges in this manner is plain and has been well stated for us by another court:

> [A] large number of the charges with the EEOC are filed by ordinary people unschooled in the technicalities of the law. * * * To compel the charging party to specifically articulate in a charge filed with the Commission, the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected.

King v. Georgia Power Co., N.D.Ga. 1968, 295 F.Supp. 943, 947.

The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that

> the complaint in the civil action * * * may properly encompass any * * * discrimination like or reasonably related to the allegations of the charge and growing out of such allegations
>
>     *    *    *    *    *    *

King v. Georgia Power Co., *supra*, at 947; *see* United States v. Mayton, 5th Cir. 1964, 335 F.2d 153 at 161. *See also* Jenkins v. United Gas Corp., 5th Cir. 1968, 400 F.2d 28, 30 n. 3; Sciaraffa v. Oxford Paper Co., D.Me.1970, 310 F.Supp. 891, 897–898.

It is plain that an inquiry into the *reasons* Mrs. Danner was discharged is "reasonably related" to her allegation that she was discharged. And, if the reason she was discharged is that Phillips wanted to cut back on plant personnel, and it began its cut-back with Mrs. Danner because she could assert no seniority or "bumping" rights, then an inquiry into the reason she lacked such

rights clearly is proper as "growing out of" Mrs. Danner's charge. In short, we conclude that there was no material difference between what Mrs. Danner complained of in the hearing below and her original charge against Phillips in the EEOC.[3]

### III. *Sufficiency of the Evidence*

Next, Phillips attacks the fact findings of the trial court as clearly erroneous, and the conclusions drawn therefrom as wrong. Phillips argues that there is no evidence to support the trial court's conclusion that Mrs. Danner suffered sex discrimination.

Phillips does not dispute, however, that none of its women employees have seniority or bidding rights. This finding by the district court clearly is supported by the evidence; it is based on the testimony of one of Phillips' own witnesses, and it is uncontradicted.

■ This fact alone was enough to make out a prima facie case of sex discrimination against Phillips and to place the burden of explaining the fact upon Phillips.

Phillips' only explanation is that it is "company policy" not to give seniority and bidding rights to clerical employees because clerical jobs are not "unionized" jobs. Phillips' policy is to give all its non-union employees who hold "unionized" jobs the same benefits those employees would have if they were members of the union. Only the jobs of its "roustabouts" or utility men and its roughnecks are "unionized" jobs; thus only men holding those jobs possess seniority and bidding rights. And since there are no women "roustabouts" or roughnecks, Phillips explains, no women possess seniority or bidding rights.

■ The trial court concluded that Phillips' "company policy" did not show a sufficient business necessity to justify the net effect of that policy—which is to

---

3. The instant case is quite different from such cases as Edwards v. North American Rockwell Corp., D.Calif.1968, 291 F.Supp. 199, where allegations were made in the complaint about allegedly discriminatory actions taken by the Company *after* the date the complainant's charge with the EEOC had been filed.

exclude all women employees from seniority benefits. We must agree with this conclusion.

A "policy" to limit company privileges to only one class of employees and to exclude others cannot survive in the name of "company policy" alone if the net effect of that policy is to exclude all women. Phillips has given no business justification for excluding its clerical employees from these rights. The excuse that clerical jobs are not "unionized" jobs is no excuse. For Phillips does not contend that its relations with the union will be affected in any way if it extends these privileges to clerical workers. It is difficult, moreover, to see how Phillips could make such a contention in view of the fact that the roustabouts and roughnecks who possess these rights were not union members; Phillips had extended the rights to these men as a matter of grace. Phillips gives no good reason why it should limit those privileges to roughnecks and roustabouts.[4] And when the policy which does so limit the privileges results in sex discrimination, it violates Title VII.

■ There is, in addition, an alternate reason why we uphold the trial court's conclusion that Mrs. Danner suffered sex discrimination. In the introductory part of this opinion we listed the tasks Mrs. Danner performed as a "plant clerk" during the ten years she worked for Phillips. Her duties included such work as mixing chemicals, clean-

ing spark plugs, and general janitorial duties. The Record in this case reveals that a substantial part of the work Mrs. Danner did was work that would have been assigned to a "roustabout" or utility man. Yet, while much of Mrs. Danner's work was the work of a roustabout, she possessed none of the roustabout's privileges. And when she was discharged, her work was reassigned to four male roustabouts, all of whom had the seniority and bidding rights that would have made Mrs. Danner a less vulnerable target in a plant economy move. Moreover, not one of the men who replaced Mrs. Danner had worked for Phillips as long as she had. Thus, even if Phillips' "company policy" to limit its seniority and bidding privileges to roustabouts and roughnecks could be justified as a general proposition, it could not be justified in Mrs. Danner's case. The net effect of the policy as applied to Mrs. Danner was a grossly unfair instance of sex discrimination.

We therefore find no error in the trial court's conclusion that Mrs. Danner suffered sex discrimination, and we affirm that part of the trial court's judgment awarding Mrs. Danner attorney's fees [5] and lost wages from the time of her illegal termination, and ordering her reinstatement with rights of seniority and bidding status.

## IV. *Class Action Relief*

■ In addition to awarding Mrs. Danner lost wages and ordering that she

4. At oral argument, Phillips pointed out that its engineers and geologists also possess no seniority and bidding rights, and contended that if the trial court's action is affirmed, Phillips will be forced to extend these privileges to all its engineers and geologists, who according to Phillips do not wish to partake of the "bumping" practices of other employees because they prefer to work on a merit system. Phillips does not make this contention with respect to clerical workers, of course, nor do we think it plausibly could make such a contention in the face of Mrs. Danner's lawsuit. At any rate, we wish to make it clear that we have no intention of imposing seniority and bidding privileges upon employees who do not want them.

That is one reason we have found that the district court erred in awarding class action relief in this case. See Part IV of this opinion. We have affirmed the action of the district court only to the extent that it affords relief to Mrs. Danner, who is neither an engineer nor a geologist, and who, as a clerical employee, clearly wishes to have the same employment privileges as the men who replaced her in her job. See Part IV of this opinion.

5. An attorney's fee award is included in the relief a district court may give in a Title VII action. *See* BNA FEP Manual 431:205.

be reinstated, the trial court enjoined Phillips from discriminating against any other female because of sex, and retained jurisdiction of the case for the purpose of determining by appropriate proceedings that Phillips has initiated a proper seniority plan for its female employees. Phillips complains that this was an award of class action relief when none had been sought by Mrs. Danner and no basis for such relief has been established at the trial. We agree with Phillips on this point.

█ Class actions are very specialized types of suits, and "an allegation of class representation is attended by serious consequences." Philadelphia Electric Co v. Anaconda American Brass Co., E.D.Pa.1967, 42 F.R.D. 324, 328. Class actions are governed by the quite specific requirements of Rule 23 of the Federal Rules of Civil Procedure, and as a general rule, an action on behalf of unnamed persons must be brought in conformity with Rule 23. *See* 3B Moore's Federal Practice ¶23.02–2.

Rule 23, among other things, requires that the party suing establish himself as an adequate representative of the class,[6] and that the class be so large in number that it would be impracticable to join all members.[7] Moreover, the class itself must be identified.[8] In addition, once a court has determined that the suit is to be maintained as a class action, it may be required by subdivision (c) (2) of the Rule, or it may feel it advisable under subdivision (d) (2) of the Rule, to notify as many members of the class as possible of the existence of the suit and of those members' rights to be excluded from the suit.[9]

In the instant suit, none of the Rule 23 prerequisites have been satisfied. Mrs. Danner sued as an individual plaintiff; she established a prima facie case of sex discrimination against herself by proving that she had been discharged in a plant economy move because she possessed no seniority or bidding rights, and that no women in the plant had such rights. She showed further that the work she was doing was substantially similar to the work of men in the plant who had seniority and bidding rights, and that she was replaced by men who possessed those rights. Mrs. Danner, however, never took up the banner of women's liberation for all the female employees in the Phillips plant. This, of course, does not mean that female employees of Phillips may not take advantage of Mrs. Danner's judicial victory in the future, or, indeed, that they may not join together in a class action against Phillips if they feel one is justified. But if they decide to bring a class action, it must be brought and identified as such, and the predicate for class action relief must be carefully laid.[10] In the meantime, Mrs. Danner's victory is for her alone to taste and enjoy.

The trial court's judgment must be modified accordingly.

Affirmed and modified.

---

6. Mrs. Danner made no claim of representative status, nor any attempt to establish representative status in this suit. Moreover, her status as a representative of all women clerical employees or all women employees might have been questionable in light of some of the rather individualized aspects of her problem.

7. In this suit, there were only around 30 women employed in the Phillips plant.

8. There is no indication whether the district court's judgment would apply to all women, including women engineers and geologists, *see* note 4 *supra,* or only women clerical workers.

9. The district court might have found such a procedure very desirable in the instant case. *See* note 4 *supra.*

10. Our denial of class action relief in the instant case by no means affects the previous rulings of this Court holding (1) that class actions are permissible under Title VII and (2) that it is not necessary that every member of the class bringing a Title VII suit first file a charge with the EEOC. *See* Miller v. International Paper Co., 5th Cir. 1968, 408 F.2d 283; Oatis v. Crown Zellerbach Corp., 5th Cir. 1968, 398 F.2d 496. All we hold is that class action relief must be predicated upon a proper class action complaint satisfying all the requirements of Rule 23.