**Beverly Jeanne JENKINS, Plaintiff-Appellant,**

v.

**BLUE CROSS MUTUAL HOSPITAL INSURANCE, INC., and Blue Shield Mutual Medical Insurance, Inc., Defendants-Appellees.**

**No. 75–1231.**

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1975.

Decided Sept. 8, 1975.

Rehearing En Banc Granted Nov. 19, 1975.

John O. Moss, Indianapolis, Ind., Paul J. Spiegelman, Berkeley, Cal., for plaintiff-appellant.

D. Reed Scism, Indianapolis, Ind., for defendants-appellees.

Before TUTTLE,* TONE and BAUER, Circuit Judges.

TUTTLE, Circuit Judge.

The plaintiff Beverly Jeanne Jenkins brought this action on her own behalf and for a class she purported to represent, charging the defendants, Blue Cross Mutual Hospital Insurance, Inc., Blue Cross Medical Insurance, Inc. (Blue Cross-Blue Shield), her former employer, with racial and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. The district court determined that the action could not proceed as a class action; thereafter the court denied the plaintiff's motion for a preliminary injunction to enjoin the defendants' promotion and employee evaluation practices, which were alleged to have discriminatory effect.

* Hon. Elbert P. Tuttle, United States Circuit Judge, Fifth Circuit, sitting by designation.

The plaintiff appeals the denial of her requested preliminary injunction, pursuant to 28 U.S.C. § 1292(a)(1). The preliminary injunction which was requested would have enjoined the defendants' current employee evaluation and promotion practices. As the plaintiff was no longer employed by the defendants at the time suit was filed, she clearly could not allege irreparable injury to herself resulting from the continued use of these practices. Rather, as the plaintiff candidly admits, it is the harm allegedly suffered by the class of present employees which the plaintiff argues justifies enjoining the defendants' supervisory performance rating system.

Thus, the real issue which the plaintiff seeks to appeal is whether she should be permitted to maintain her suit as a class action; only if the district court erred in denying the plaintiff the right to proceed as a representative of a class of all past and present employees could its subsequent refusal to grant a preliminary injunction be seriously challenged.

## I. APPEALABILITY.

Generally a trial court's decision that a suit is inappropriate to proceed as a class action is not a "final decision" and thus cannot be appealed under 28 U.S.C. § 1291,[1] 3B Moore's Federal Practice, ¶ 23.97 at 23—1911-52. While certain limited exceptions to 28 U.S.C. § 1291's requirement of a final order of the district court have developed permitting interlocutory appellate review of certain class action determinations where those decisions have in some sense a final effect on the action,[2] these exceptions have been rejected in this circuit as a basis for permitting an appeal

from an order refusing class status,[3] and the plaintiff does not attempt to invoke them. Rather, the plaintiff seeks to review the district court's class action determination by the limited interlocutory appeal permitted by 28 U.S.C. § 1292(a)(1) which provides:

"The courts of appeals shall have jurisdiction of appeals from: (1) interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . ."

While the plaintiff cites no authority for this approach, a substantial body of case law has in fact developed for the view that

"when injunctive relief is sought and the denial of class action treatment has the effect of denying the broad injunctive relief requested in the complaint, the order is appealable under 28 U.S.C. § 1292(a)(1) as an order denying an injunction."

3B Moore's Federal Practice, ¶ 23.97 (1973 Supp.) at 130. *See Price v. Lucky Stores, Inc.*, 501 F.2d 1177 (9th Cir. 1974); *Hackett v. General Host Corp.*, 455 F.2d 618, 622 (3rd Cir. 1972); *Yaffee v. Powers*, 454 F.2d 1362 (1st Cir. 1972); *Spangler v. United States*, 415 F.2d 1242 (9th Cir. 1969); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968); *Shapiro Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426 (2d Cir. 1967); *Brunson v. Board of Trustees*, 311 F.2d 107 (4th Cir. 1962), *cert. denied*, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963).[4]

We find these authorities convincing. Certainly in this case there is an order

---

1. Section 1291 provides:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."

2. These exceptions are commonly known as the "death knell" and the "collateral order" doctrines. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119 (2d Cir. 1966), *cert. denied*,

386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). *Compare Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 2148–2150, 40 L.Ed.2d 732 (1974). *See generally* 3B Moore's Federal Practice, ¶ 23.97.

3. *King v. Kansas City Southern Industries, Inc.*, 479 F.2d 1259 (7th Cir. 1973).

4. *See generally* Note, Interlocutory Appeal from Order Striking Class Action Allegations, 70 Colum.L.Rev. 1292 (1970).

denying a preliminary injunction, which would permit review under the terms of § 1292(a)(1). Further, there can be no doubt that the district court's earlier refusal to certify the suit as a class action directly controlled its subsequent decision on the requested preliminary injunction.[5]

Because the class action determination of the district court directly controlled the subsequent disposition of the request for a preliminary injunction, we believe it, too, is reviewable under 28 U.S.C. § 1292(a)(1). By refusing to certify the action as a class action, the district court effectively precluded a grant of preliminary injunction relief; as the plaintiff was no longer employed by the defendants, Blue Cross-Blue Shield, she clearly suffered no continuing harm from the challenged promotional and employee evaluation practices. Accordingly, in our view, the refusal to certify the suit as a class action limited the potential injunctive relief which the plaintiff could obtain, and accordingly can be appealed at this time.

A conflict has developed in the circuits as to whether a class action decision, standing alone, without an order denying a preliminary injunction is also reviewable under 28 U.S.C. § 1292(a)(1). *See* *Williams v. Mumford*, 511 F.2d 363 (D.C. Cir. 1975); *Yaffee v. Powers*, 454 F.2d 1362 (1st Cir. 1972); *City of New York v. International Pipe & Ceramics Corp.*, 410 F.2d 295 (2d Cir. 1969); *Brunson v. Board of Trustees*, 311 F.2d 107 (4th Cir. 1962), *cert. denied*, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963). We note, however, that we do not confront this question in this case. Here the plaintiff specifically and expressly moved for a preliminary injunction, and that request was denied; the plaintiff's appeal is formally from that denial of her motion for preliminary injunction, and thus the question whether an appeal may lie from the refusal to certify a suit as a class action standing alone is not presented by the facts of this case. We express no view as to whether the plaintiff could similarly appeal from the earlier order refusing to certify her suit as a class action.[6]

## II.  CLASS ACTION.

The plaintiff attempted to bring this action on behalf of a class composed of "all black and female persons who are employed, or might be employed, by Blue Cross-Blue Shield, Inc.," alleging discriminatory patterns and practices in employee hiring, promotion, and job evaluation. The plaintiff's Title VII claim asserted both racial and sex discrimination, while her § 1981 claim asserted racial discrimination. The district court refused to certify the action as a class action because it found that the plaintiff's original complaint to the EEOC was too narrow to permit the type of broad claims of racial and sex discrimination presented in the complaint, and accordingly held that the plaintiff was limited by the terms of her prior EEOC charge.[7]

---

**5.** The district court summarily denied the plaintiff's motion for preliminary injunction without assigning any reasons for its decision. We believe the reason the court dealt with the motion in the manner it did was because the plaintiff's only arguments in favor of the motion were advanced on behalf of the class which the district court had months before struck from the suit; indeed, the only allegations of irreparable injury concerned the injury to a class the court no longer viewed as part of the suit. Under these circumstances, we are convinced the court's class action determination controlled its subsequent denial of preliminary injunction.

**6.** When the district court denied the plaintiff's request to maintain her suit as a class action it also denied the motions of three other employees of the defendants who sought to intervene in the action, who also alleged racial and sex discrimination. These employees were represented by the same counsel who presently represent the plaintiff. Unaccountably, these intervenors failed to appeal the district court's denial of intervention.

**7.** In her charge to the EEOC the plaintiff alleged in part that

"I feel that I am being discriminated in the terms and conditions of my employment be-

The district court noted that nowhere in the EEOC charge did the plaintiff specifically raise the question of sex discrimination; the court noted that the plaintiff in her EEOC charge did not challenge the hiring and testing practices of Blue Cross-Blue Shield, and while her charge that she was denied a promotion because of her Afro hairstyle had an "arguable connection to race by allegation of hairstyle discrimination, such is not sufficient to raise the panorama of alleged evils the plaintiff seeks to adjudicate."

The district court determined that any class which the plaintiff could represent must be limited by the terms of her EEOC charge, that is, to a class of persons denied promotion due to wearing a natural Afro hairstyle. Accordingly, the district court held that because there was no allegation of numerosity of class members or commonality of legal claims of a class so defined, the plaintiff failed to allege a class which could be maintained under Rule 23 of the Federal Rules of Civil Procedure.

The district court appears not to have considered what effect the plaintiff's second claim based on 42 U.S.C. § 1981 should have on its class action determination.

In our view, the plaintiff was entitled to make the broad allegations of racial discrimination she did, under § 1981. In our view this action provides a sufficient basis for adjudicating the claims presented in the plaintiff's complaint. We agree with the district court, however, that the failure of the plaintiff to allege sex discrimination in her charge before the EEOC precludes her from raising the issue in this proceeding.

A. *42 U.S.C. § 1981.*

42 U.S.C. § 1981 provides that:

"All persons within the jurisdiction of the United States shall have the same right in every state . . . to make and enforce contracts . . . enjoyed by white citizens . . . ."

This provision has been uniformly construed to prohibit private discrimination in employment. *Waters v. Wisconsin Steel Works*, 427 F.2d 476 (7th Cir. 1970), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); *Sanders v. Dobbs Houses, Inc.*, 431 F.2d 1097 (5th Cir. 1970), *cert. denied*, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S. App.D.C. 69, 478 F.2d 979 (1973). *See generally* Comment, Racial Discrimination and Employment Under the Civil Rights Act of 1866, 36 U.Chi.L.Rev. 615 (1969). This court has held that the passage of Title VII in no way impliedly repealed § 1981, *Waters v. Wisconsin Steel Works, supra,* 427 F.2d at 485, noting that "the legislative history of Title VII strongly demonstrates an intent to preserve previously existing causes of action." *Id. See also Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Indeed, in this court's second *Wisconsin Steel Works* decision, 502 F.2d 1309, 1315 (7th Cir. 1974), this court concurred in the views of the five other circuits which have considered the question in holding that § 1981 is available even to those plaintiffs who have failed to pursue their Title VII administrative remedies. *See Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir. 1974); *Young v. International Telephone & Telegraph Co.,* 438 F.2d 757 (3rd Cir. 1971); *Caldwell v. National Brewing Co.,* 443 F.2d 1044 (5th Cir. 1971); *Brady v. Bristol-Myers Inc.,* 459 F.2d 621 (8th Cir. 1972); *Macklin v. Spector Freight Systems, Inc.,* 156 U.S. App.D.C. 69, 478 F.2d 979 (1973).

Thus, in our view, the plaintiff's claim based upon 42 U.S.C. § 1981 alleging racial discrimination would properly state a class claim even if her other claim

cause of my race, Negro. I have worked for Blue Cross and Blue Shield approx. three years during which time I no problem until May, 1970 when I got my natural hairstyle. Later when I came up for promotion it was denied because my supervisor, Al Frymier, said I could never represent Blue Cross with my Afro. He also accused me of being the leader of the girls on the floor."

based upon Title VII is impermissibly broad in light of her EEOC charge.[8] "§ 1981 is available to plaintiff without regard to Title VII limitations." *Alpha Portland Cement Co. v. Reese*, 507 F.2d 607, 610 (5th Cir. 1975).

On the limited record before us on this appeal there appear to be unresolved factual questions as to whether the action can proceed as a class action. These questions were not considered by the district court in its earlier order denying class action treatment, based upon the EEOC charge. Two questions appear to us to have importance in determining whether plaintiff can serve as a representative for those black employees who allegedly have been injured by the defendants' discriminatory employee evaluation and promotion practices. First, the plaintiff resigned her employment—but alleges that she did so due to some form of coercion; secondly, it appears that many of the evaluation and promotion practices complained of in the complaint were instituted after the plaintiff left the defendants' employ.

■■ The plaintiff must be a member of the class which she seeks to represent, with sufficient interest in the outcome to assure that she will adequately and fairly represent the class. Fed.R. Civ.P. 23(a). The plaintiff cannot meet these standards if she in fact voluntarily resigned her employment for reasons unrelated to the employee evaluation and promotion practices of which she now complains. On remand the district court should consider these questions in determining whether the requirements of Rule 23 are met.

*B. Title VII.*

This litigation began when the plaintiff, Beverly Jeanne Jenkins, completed an EEOC charge form on June 8, 1971 naming her former employer, Blue Cross-Blue Shield, as the party which had discriminated against her. She checked the box marked "Race or Color" and made the following statement to explain what in her view constituted the "unfair thing" which had been done to her.

"I feel that I am being discriminated in the terms and conditions of my employment because of my race, Negro. I have worked for Blue Cross and Blue Shield approx. three years during which time I no problem until May, 1971 when I got my natural hairstyle. Later when I came up for promotion it was denied because my supervisor, Al Frymier, said I could never represent Blue Cross with my Afro. He also accused me of being a leader of the girls on the floor. The pressure I was working under kept me upset, therefore, I asked for a leave of absence. I was told I had to take a vacation before I could be granted a leave of absence. I was granted a week vacation and on my return I was asked to take a 90-day leave, quit, or be fired, time they said to get myself together; at the end of this time they would be able to place me on another job. A White employee who associated with me might have been denied her promotion because of her association with me."

The plaintiff received her statutory notice of her right to sue from the EEOC on August 4, 1972.

Plaintiff filed this suit on August 28, 1972 alleging a broad-based pattern and practice of racial and sex discrimination against her and the class she purported to represent in hiring, assignment, pay and promotion.[9]

---

**8.** We note that the plaintiff properly alleged only racial discrimination as part of her § 1981 claim; § 1981 has been generally read to apply only to discrimination based on race. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *Long v. Ford Motor Co.*, 496 F.2d 500, 503 (6th Cir. 1974); *Arnold v. Tiffany*, 487 F.2d 216, 217 (9th Cir. 1973), *cert. denied*, 415 U.S. 984,

94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *but see Guerra v. Manchester Terminal Corp.*, 498 F.2d 641 (5th Cir. 1974).

**9.** Specifically the plaintiff's complaint alleged that Blue Cross-Blue Shield discriminated on the basis of race and sex by

"a. Maintaining requirements for office and clerical positions which denied blacks

The district court found that because the plaintiff's EEOC charge limited the scope of the complaint she could subsequently file in federal court under Title VII, any subsequent Title VII action in federal court must be limited to the specific issue of denial of promotion opportunities due to wearing an Afro hairstyle. On that basis, the district court found that the plaintiff had failed to allege that others were injured due to the same discriminatory practice, and accordingly the suit could not be maintained as a class action.

■ Although this court has not previously enunciated a precise rule for purposes of determining what is the proper scope of the allegations in a complaint when compared against the original charge filed with the EEOC, we are in agreement that the rule as stated in the case of *Danner v. Phillips Petroleum Co.,* 447 F.2d 159 (5th Cir. 1971), should be followed. The court in that case said:

> "the correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that 'the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations."

equal opportunity for employment in such positions which are neither job-related nor necessary to the safe, efficient conduct of defendant's business.

b. Requiring employees to stay within strictly delineated confines of dress codes and hairstyles which, not only discriminate against blacks because of their race, but more invidiously imperils the ability of blacks to rid themselves of a vestige of slavery by requiring them to accept white hairstyles and dress styles as a term and condition of employment.

c. Failing and refusing to hire, facilitate the hiring of, or promote persons who are black to supervisory or managerial positions in departments other than those where the majority of workers are black.

d. Assigning blacks and women to the lowest-paying office and clerical jobs and virtually excluding them from higher-paying office and clerical and managerial positions.

*Danner v. Phillips Petroleum Co., supra,* 447 F.2d at 162.

Upon careful examination of the complaint and the charge, Judges Bauer and Tone agree that the trial court properly construed the particular charge here in light of the general principles, and that the charge does not form a proper basis for the complaint that the defendant pursued a practice and pattern of discrimination in the manner alleged in the complaint. Judge Tuttle would hold that the charge was sufficient under the announced standard to support the allegations of the complaint.

■ The Court is unanimously of the view that the charge does not form a proper basis under Title VII for any complaint of discrimination on the basis of sex.

## III. CONCLUSION.

In light of the fact that the trial court dismissed the complaint because of the failure of the named plaintiff to qualify as representative of her class under Title VII, without giving consideration to the claim based on § 1981, and since we conclude that the relief claimed under § 1981 need not be based on any form of claim filed with the EEOC, we hold that the judgment of the trial court must be reversed for further consideration of the questions raised under Section II, A of

e. Paying blacks less money than whites for identical jobs.

f. Failing and refusing to promote blacks and women because of their race and sex.

g. Failing and refusing to hire blacks because of their race.

h. Failing to recruit blacks on the same basis for the same jobs as whites.

i. Utilizing paper and pencil tests which deny and tend to deny black persons equal opportunity for hiring and promotion, which tests are not job-related and are not necessary to the safe and efficient conduct of the defendant's business."

The complaint requested injunctive relief against these practices, as well as reinstatement of the plaintiff and back pay and other restitutionary relief for the plaintiff and other members of the class injured because of the allegedly discriminatory practices.

this opinion—that is, whether the named plaintiff terminated her employment voluntarily, and if she did not, whether she can qualify as a representative of the class under Fed.R.Civ.P. 23(a). The court, under such circumstances, will then give consideration to what equitable relief the plaintiff may be entitled to.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.