Beverly Jeanne JENKINS,
Plaintiff-Appellant,

v.

BLUE CROSS MUTUAL HOSPITAL IN-
SURANCE, INC., and Blue Shield Mutu-
al Medical Insurance, Inc., Defendants-
Appellees.

No. 75–1231.

United States Court of Appeals,
Seventh Circuit.

Reheard In Banc Jan. 26, 1976.

Decided July 21, 1976.

John O. Moss, Indianapolis, Ind., Paul J. Spiegelman, Berkeley, Cal., for plaintiff-appellant.

Charles L. Reischel, Equal Employment Opportunity Commission, Washington, D.C., for EEOC.

D. Reed Scism, Indianapolis, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal reheard in banc concentrates on whether the alleged victim of racial and sex discrimination made sufficiently like or reasonably related allegations in her charges to the Equal Employment Opportunity Commission to support, and out of which could grow or reasonably be expected to grow, the racial and sex allegations in her judicial complaint.

### I.

The plaintiff brought this action on her own behalf and on behalf of other persons similarly situated as a class action, charging the defendants, her former employers, with denying her promotions and better assignments, and with ultimately terminating her employment because of her "race, sex, black styles of hair and dress," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. The plaintiff sought declaratory and injunctive relief, reinstatement with backpay and other money damages.

On July 17, 1974, the district court denied the plaintiff's motion seeking an order pursuant to F.R.Civ.P. 23(c)(1) determining that the action be maintainable as a class action.[1] The court stated that "a Title VII complaint must be viewed in relationship to the charges filed by the plaintiff against the defendant before the Equal Employment Opportunity Commission." The court's reasoning in denying certification of a class action was that: (1) "[i]t is clear that she did not raise sex before the EEOC . . . ."; (2) "[w]hile there is an arguable connection to race by the allegation of hair style discrimination, such is not sufficient to raise the panorama of alleged [racial] evils plaintiff seeks to adjudicate in her complaint"; (3) "[h]er class could, therefore, only be composed of those persons denied promotion or not hired for wearing an Afro hair style"; and (4) "[n]o proof has been presented to the Court to show that this group of people would be so large that joinder of them in this action would be impracticable."

On January 21, 1975, the district court denied the plaintiff's motion for a prelimi-

---

1. Chronologically the defendants first filed a motion for a determination that the action *not* be maintainable as a class action and subsequently the plaintiff filed a cross motion for a determination that it be so maintainable. The district court order recites the existence of both motions and generally orders that "this action not be maintained as a class action" but in the accompanying "memorandum entry" only the plaintiff's motion is recited as denied.

nary injunction. The plaintiff's notice of appeal was from both the July 17, 1974 and January 21, 1975 orders.

Upon this appeal a panel of this court reversed the district court's judgment "[i]n light of the fact that the trial court dismissed the complaint because of the failure of the named plaintiff to qualify as representative of her class under Title VII, without giving consideration to the claim based on § 1981, and since we conclude that the relief claimed under § 1981 need not be based on any form of claim filed with the EEOC . . ." *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 522 F.2d 1235, 1241 (7th Cir.1975). The case was remanded for the district court to give consideration to whether the plaintiff could qualify as a representative of the class upon her § 1981 claim, which alleged only racial discrimination, and thereafter to consider "what equitable relief the plaintiff may be entitled to." *Id.* at 1242.

## II.

■ A petition for rehearing in banc was granted. Every member of the court would reach the same end result as the panel did—that is, reverse the judgment and remand the case. Also every member would do so for at least the same reason as the panel did, namely failure of the district court to give consideration to plaintiff's § 1981 claim.[2]

■ At least seven circuits, including this one, have held that § 1981 is independent of Title VII, that Title VII creates no procedural barriers to § 1981 actions, and that § 1981 is available regardless of whether one has pursued his Title VII administrative remedies. *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979, 996 (1973); *Gersham v. Chambers,* 501 F.2d 687, 691 (2d Cir.1974); *Young v. International Telephone & Telegraph Co.,* 438 F.2d 757, 763 (3d Cir.1971); *Alpha Portland Cement Co. v. Reese,* 507 F.2d 607, 610 (5th Cir.1975); *Guerra v. Manchester Terminal Corp.,* 498 F.2d 641, 652 (5th Cir.1974); *Hill v. American Airlines, Inc.,* 479 F.2d 1057, 1060 (5th Cir.1973); *Caldwell v. National Brewing Co.,* 443 F.2d 1044, 1046 (5th Cir. 1971), cert. den., 405 U.S. 916, 92 S.Ct. 931, 30 L.Ed.2d 785 (1972); *Long v. Ford Motor Co.,* 496 F.2d 500, 503 (6th Cir.1974); *Waters v. Wisconsin Steel Works of International Harvester Co.,* 502 F.2d 1309, 1315 (7th Cir.1974), cert. den., —— U.S. ——, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); *Brady v. Bristol-Meyers, Inc.,* 459 F.2d 621, 623 (8th Cir.1972).

Finally, every member of the court would agree with the panel's conclusion that the propriety and nature of equitable relief should depend at the minimum upon the resolution of the § 1981 question.

## III.

At this point, however, the views of the court divide. The district court had concluded that the plaintiff's EEOC charges limited her Title VII court complaint to charges of discrimination because of her wearing an Afro hair style. The original appeal panel consisting of Judges Tuttle,[3] Tone and Bauer was "unanimously of the view that the [EEOC] charge does not form the proper basis under Title VII for any complaint of discrimination on the basis of

**2.** Every member of the court also agrees with the panel's conclusion that the district court's judgment is appealable inasmuch as "[h]ere the plaintiff specifically and expressly moved for a preliminary injunction, and that request was denied; the plaintiff's appeal is formally from that denial of her motion for preliminary injunction, and thus the question whether an appeal may lie from the refusal to certify a suit as a class action standing alone is not presented by the facts of this case." 522 F.2d at 1238. Since the panel's decision, the entire court (except Judges Swygert and Bauer) in another

case voted against allowing an appeal from a denial of class status as a matter of right absent the denial of a preliminary injunction. *Anschul v. Sitmar Cruises, Inc.,* No. 74–1908, May 17, 1976) (see footnote at beginning of opinion reaffirming *King v. Kansas City Southern Industries, Inc.,* 479 F.2d 1259 (7th Cir.1973) and *Thill Securities Corp. v. New York Stock Exchange,* 469 F.2d 14 (7th Cir.1972)).

**3.** Honorable Elbert P. Tuttle, United States Circuit Judge, Fifth Circuit, had been sitting by designation, and wrote the panel's opinion.

sex." 522 F.2d at 1241. Judges Tone and Bauer also agreed with the district court that the EEOC charge did not support allegations of racial discrimination beyond those due to wearing an Afro hair style. "Judge Tuttle would hold that the charge was sufficient under the announced standard to support the [racial] allegations of the complaint."

*Id.*

Upon the rehearing in banc a majority of the entire court[4] concluded that the judgment should be reversed and remanded not only because of the § 1981 claim but also because the plaintiff's EEOC charges adequately support her judicial complaints of racial and sex discrimination.

The plaintiff's charge form, filed on June 8, 1971, with the EEOC, showed a check mark in the box on the form to indicate that the discrimination was because of "Race or Color" but no check mark appeared in the box preceded by the word "Sex." The explanation the plaintiff gave on the form for the discrimination was:

> I feel that I am being discriminated in the terms and conditions of my employment because of my race, Negro. I have worked for Blue Cross and Blue Shield approx. 3 years during which time I [had] no problem until May 1970 when I got my natural hair style. Later when I came up for promotion it was denied because my supervisor, Al Frymier, said I could never represent Blue Cross with my Afro. He also accused me of being the leader of the girls on the floor. The pressures I was working under kept me upset, therefore, I asked for a leave of absence. I was told I had to take a vacation before I could be granted leave of absence. I was granted a week vacation and on my return I was asked to take a 90 day leave, quit, or be fired, time they said to get myself together; and at the end of this time they would be able to place me on another job. A White employee who associated with

me might have been denied her promotion because of her association with me.

The plaintiff received her statutory notice of her right to sue from the EEOC on August 4, 1972 and filed her complaint in the district court on August 28, 1972.

■ The entire court accepts the standard referred to in the panel decision as the guiding principle in its determination, namely that set forth in *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir. 1971):

> The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that "the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations."

The majority parts with the panel in its application of the standard.

In *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), the Supreme Court unanimously expressed its opinion that "we hold to less stringent standards [the allegations of a *pro se* complaint] than formal pleadings drafted by lawyers . . . ." In a case also unanimously decided a few days later, *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972), involving EEOC procedure, the Court said that "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process."

We have held that Title VII is to "be construed and applied broadly," *Motorola, Inc. v. McLain,* 484 F.2d 1339, 1344 (7th Cir.1973), and in doing so, we have recognized that EEOC charges are in layman's language, *Cox v. United States Gypsum Co.,* 409 F.2d 289, 290–1 (7th Cir.1969). The context in which we must operate was well stated by Judge Bauer in *Willis v. Chicago*

4. The argument on rehearing and consideration of the case took place before the induction of Judge Harlington Wood, Jr., to fill the vacancy created by the elevation of Judge John Paul Stevens to the Supreme Court on December 19, 1975.

*Extruded Metals Co.,* 375 F.Supp. 362, 365–366 (N.D.Ill.1974) (footnotes omitted):

[T]he Civil Rights Act is designed to protect those who are least able to protect themselves. Complainants to the EEOC are seldom lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of 'discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected. . . .

[T]he EEOC charges simply stated in laymen's language the "unfair thing that happened" to the plaintiff, that is, the discriminatory discharge . . ..

' This policy of being "solicitous of the Title VII plaintiff" has been expressed by many courts. *Gamble v. Birmingham Southern R.R.,* 514 F.2d 678, 687–689 (5th Cir.1975); *Danner v. Phillips Petroleum Co., supra,* at 161–2; *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 463 (5th Cir. 1970).

In the present case the plaintiff checked the EEOC form box stating that the "discrimination [was] because of . . . Race or Color." She began describing the "unfair thing done" to her by saying that "I feel that I am being discriminated in the terms and conditions of my employment because of my race, Negro." She said that her supervisor denied her a promotion because she "could never represent Blue Cross with my Afro." A lay person's description of racial discrimination could hardly be more explicit. The reference to the Afro hairstyle was merely the method by which the plaintiff's supervisor allegedly expressed the employer's racial discrimination. The plaintiff stated that for three years prior to wearing her Afro hairstyle, she had no problem. As we have said, "[a] single charge may 'launch a full scale inquiry' " into racial discrimination. *Motorola, Inc. v. McLain, supra,* at 1346.

■ The majority agrees with Judge Tuttle's minority position in the panel deci-

sion that the EEOC charge was sufficient to support the racial discrimination allegations of the complaint. 522 F.2d at 1241. Judge Tuttle reached the same conclusion speaking for the Fifth Circuit in *Smith v. Delta Air Lines, Inc.,* 486 F.2d 512 (5th Cir.1973), where the court held that a charge alleging discrimination stemming from grooming requirements which applied particularly to black persons constituted a sufficient charge of racial discrimination when accompanied by substantially the same general allegation of racial discrimination as here.

■ In regard to sex discrimination, it is true that the plaintiff did not check the sex discrimination box on the EEOC form. In *Sanchez v. Standard Brands, Inc., supra,* at 462–464, the reverse situation had occurred. The plaintiff had checked only the box labeled "sex" and in her judicial complaint alleged discrimination because of her "national origin." The Fifth Circuit said:

. . . [W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out.

In *Wetzel v. Liberty Mutual Insurance Co.,* 511 F.2d 199, 202–203 (3d Cir.1975), *vacated on other grounds,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435, 44 U.S.L.W. 4350 (1976), an alleged victim of sex discrimination checked the wrong box. The court held that lay persons were not to be denied access to the federal courts because of a technical error. Finally, in *Vuyanich v. Republic National Bank,* 409 F.Supp. 1083 (N.D.Tex.1976), the plaintiff's EEOC charge expressly stated only racial prejudice whereas her judicial complaint alleged both racial and sexual discrimination. The court held that she could proceed on both grounds inasmuch as her EEOC form stated that her superior told her that she [a black female] "probably did not need a job anyway, because her husband was a Caucasian." *Id.,* at 1985. The court concluded that such a statement discriminated against both black persons and females since it

could not be made to either a white person or a male. *Id.,* at 1089.

In the present case, the plaintiff charged to the EEOC that her superior, in addition to referring to her Afro hairstyle, "also accused me of being a leader of the girls on the floor." The plaintiff then stated that "[a] White employee who associated with me might have been denied her promotion because of her association with me." These statements taken in conjunction with the charges of racial discrimination also charge sex discrimination.

In *Danner v. Phillips Petroleum Co., supra,* at 161–163, the case relied upon by the panel here in its original decision, the court held that the alleged victim of sex discrimination adequately charged it to the EEOC where all she charged was that "[t]herefore due to the fact that my position was not eliminated, just taken from me and given to a man, I feel that I have been mistreated and damaged."

The majority of this court conclude that the plaintiff sufficiently charged both racial and sex discrimination in her EEOC form in order to be eligible to represent a class composed of "all black and female persons who are employed, or might be employed, by Blue Cross-Blue Shield, Inc." The panel referred to the fact that the plaintiff was no longer employed by the defendants at the time the suit was filed and then alluded to the fact that upon remand the district court could consider "whether the named plaintiff terminated her employment voluntarily, and if she did not, whether she can qualify as a representative of the class. . . . ." Upon remand these questions should be considered by the district court in the light of *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, 44 U.S.L.W. 4356, 4357–4358 (1976).

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

TONE, Circuit Judge, with whom PELL and BAUER, Circuit Judges, join (dissenting).

I agree with the majority's statement of the governing legal principles. My only disagreement is in the reading of plaintiff's charge filed with the EEOC, which is quoted in full in the majority opinion. The reader of these opinions can judge for himself whether the present challenges to defendant's recruitment and promotion practices, including testing, pay scale, and job-qualification standards (see 522 F.2d at 1240 n. 9), are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." * See *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir.1971). It appears to me that plaintiff made it clear she was not complaining about such practices when she said in her EEOC charge:

"I have worked for Blue Cross and Blue Shield approximately 3 years during which time I [had] no problem until May 1970 when I got my natural hair style."

I can find nothing elsewhere in the charge that contradicts or qualifies this statement and nothing that suggests a pattern and practice charge based on race or sex. (I attach no significance to the failure to check the box marked "Sex.") She seems to me to be saying that after three years of employment about which she has no complaints she had her hair styled in an Afro fashion, and was unfairly treated because of that. If the relatedness or growing-out-of requirement is to be abolished, I would have no objection. I cannot agree, however, that if there is to be such a requirement it has been satisfied with respect to the pattern and practice charges described above.

---

* I do not include among the allegations which are not supported by the charge the one to the effect that black employees were required to observe white hair styles and dress styles (item b in footnote 9, 522 F.2d at 1240–1241), which I think does satisfy the *Danner* test.