**Linda PICKNEY, Plaintiff,**

v.

**AMERICAN DISTRICT TELEGRAPH COMPANY OF ARKANSAS, a corporation, Defendant.**

**No. J–C–83–19.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Aug. 8, 1983.

Scott Davidson, Jonesboro, Ark., for plaintiff.

Stephen Reasoner, Jonesboro, Ark., for defendant.

## ORDER

EISELE, Chief Judge.

Pending before the Court is the defendant's motion to dismiss Count II of the plaintiff's complaint in this Title VII action. The defendant contends that the allegations raised in Count II exceed the scope of the Plaintiff's EEOC charge and consequently may not be considered. The Court finds the defendant's position well-taken.

## I. FACTS

### A. *Background*

The plaintiff filed a discrimination charge with the EEOC on January 25, 1982, in which she alleged that her former employer, American District Telegraph Company, had subjected her to sex and race discrimination. Her EEOC charge states as follows:

On 8–17–81, I was fired from my position as an Assembler. I had been employed there about three (3) years.

Richard Calvert (M), Plant Manager, told me I was fired due to excessive absenteeism.

I believe that I was fired because of my race, White, and sex, female, in that:

1. I requested and was given permission by Don Settles (M), Acting Supervisor, to be off for one (1) week on 8–10–81, for personal reasons. When I returned, I was fired for excessive absenteeism.

2. I have only missed 13 days since being hired by Respondent. James Brown (B/M), Assembler, and Michael Kelly (W/M), Material Handler, have missed work numerous times, but they were not fired.

3. Even though James Vance (B/M) was fired for excessive absenteeism, Respondent rehired him, but I was not rehired.

4. Benny Henson (W/M), Assembler, was off for one (1) week due to his brother being ill in the hospital, but he was not fired.

5. Previous to my discharge, I received no warnings about my performance.

### B. *Allegations*

On October 21, 1982, the EEOC issued a right to sue letter to the plaintiff. The plaintiff filed suit on January 21, 1983, alleging two counts of sex discrimination.

The first of these two counts alleges, as her EEOC charge contends, that she was fired due to sex discrimination on August 17, 1981, from her position as "B-Assembler".

The plaintiff's second count contains allegations that were not specifically included in her charge to the EEOC. Her contention is that she was hired as a "B-Assembler", which is an entry level position at defendant's plant. To be promoted to the position of "A-Assembler" an employee purportedly must receive training and master all of the jobs on the line. Plaintiff avers that the defendant's agents represented to her that she would receive exposure to all of the jobs, but that, in fact, the "male supervisors systematically assigned jobs in a manner that kept the Plaintiff and other female B-Assemblers from learning all of the jobs on the line...." She further alleges that such an assignment policy such constitutes sex discrimination of which she is a victim.

The defendant has moved to dismiss Count II. It contends that the EEOC charge filed by the plaintiff and investigated by the EEOC charged "racial and sexual discrimination solely in regard to her termination from employment...." The defendant also argues that the claims made in Count II were neither "expressly [n]or by implication contained in the charges of discrimination filed with the Equal Employment Opportunity Commission nor were the same reasonably related to such charges or could have been reasonably related to such charges or could have been reasonably expected to grow out of" the EEOC's investigation. The defendant concludes that since the allegations raised in Count II were not related to those made in the EEOC charge, Count II must be dismissed.

In response, the plaintiff asserts that when she filed her EEOC charge, she was proceeding *pro se* and that her limited education and unfamiliarity with the necessary procedures rendered her unaware of the fact that other aspects of discrimination would not be investigated by the EEOC. She cites *King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D.Ga.1968), for the proposition that to compel a *pro se* litigant:

to specifically articulate in a charge filed with the Commission, the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant or unable to thoroughly describe the discriminatory practices to which they are subjected.

*Id.* at 947, *quoted in, Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971). Plaintiff thus concludes that her failure to specify discrimination in training and promotion opportunities in her charge should not foreclose the Court's consideration of these claims.

## II. APPLICABLE LAW

Keeping in mind the need for liberal construction of lay complainant's charges, *see EEOC v. Western Publishing Co.*, 502 F.2d 599, 603 (8th Cir.1974) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir.1970)), the Court must determine whether the plaintiff's Title VII claims must be restricted to the specific factual allegations raised in the EEOC charge. In short, the Court must decide whether the plaintiff may proceed with Count II of her complaint.

### A. The "Like and Related" Test

The Eighth Circuit has provided some guidance in this matter. In *Satz v. ITT Financial Corp.*, 619 F.2d 738 (8th Cir.1980), the plaintiff filed an EEOC charge claiming two forms of sex discrimination: denial of equal pay; and denial of equal promotional opportunities. The complaint alleged these two claims and then asserted two additional grounds for Title VII relief: discrimination in the provision of training opportunities and discrimination in assignment of job duties. The court noted: "A Title VII complainant may raise claims in court 'like or related' to the substance of the complainant's charge before the EEOC." *Id.* at 741 (citing, *inter alia, Jenkins v. Blue Cross Mutual Hospital Insurance Co.*, 538 F.2d 164 (7th Cir.), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976)). *See also EEOC*

v. *General Electric Co.*, 532 F.2d 359, 369 (4th Cir.1976). Finding that the two new allegations raised in the complaint were "like or related" to the substance of the plaintiff's charge, the court determined that they could properly be addressed. 619 F.2d at 742.

### B. The "Reasonably Related" Test

Since *Satz*, the Eighth Circuit apparently has not elaborated upon what might constitute a "like and related" claim. An analogous test emerged in *Danner v. Phillips Petroleum*, 447 F.2d 159, (5th Cir.1971). There, the Fifth Circuit found that allegations raised in a complaint may be pursued if they are "reasonably related" to the claims made in the EEOC charge. The Plaintiff in *Danner* had worked for the defendant for ten years before being discharged from her position as "plant clerk" purportedly due to a reduction in force. At trial, the plaintiff successfully argued that had she been given the same seniority that men in the company received, she would not have been discharged. Defendants challenged the plaintiff's seniority claim as going beyond the scope of her EEOC charge. That charge stated simply:

> they took a young roustabout and gave him a job and laid me off. Therefore due to the fact that my position was not eliminated, just taken from me and given to a man, I feel that I have been mistreated and damaged.

The Fifth Circuit observed its duty to construe liberally *pro se* complaints of discrimination. It suggested that although the charge did not specifically mention a denial of seniority rights:

It is plain that an inquiry into the reasons Mrs. Danner was discharged is "reasonably related" to her allegation that she was discharged. And if the reason she was discharged is that Phillips wanted to cut back on plant personnel, and it began its cut-back with Mrs. Danner because she could assert no seniority or "bumping rights", then an inquiry into the reason she lacked such charge. In short, we conclude that there was no material difference between what Mrs. Danner complained of in the hearing below and her original charge against Phillips in the EEOC.

*Id.* at 162. Employing the liberal construction rule, the court found that the vagueness of Danner's charge did not foreclose the seniority claim she raised in her complaint.

### C. Underpinnings of the Liberal Construction Rule

▓ The liberal construction rule stems from the rather fundamental policy that mere vagueness in a *pro se* claim should not sound the death knell for the plaintiff's discrimination allegation. After all, it is the substance of the claim, not the plaintiff's legal or literary acumen, that should dictate the outcome of the case. Thus, when assessing an EEOC charge that lacks specificity, the courts and the EEOC must be careful not to overlook what the employee really meant to contend. If the charge is conclusory, the liberal construction rule must be freely employed to ferret out the pertinent facts forming the basis of the employee's claim.[1]

The liberal construction rule does, however, have certain limitations, one of which arises by virtue of the very structure of the

---

1. The EEOC may go beyond the face of the complainant's charge when investigating discrimination claims. *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 311 (7th Cir.1981). In this connection, the EEOC may "reframe charges and ... use available materials and information to articulate lay complainant's charges." *Western Publishing Company*, 502 F.2d at 603 (quoting *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 357 (6th Cir.1969)). The extent to which the EEOC expands upon a plaintiff's charge may be critical. A court should not ignore matters unearthed during the conduct of the EEOC's investigation so long as they "can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466; *General Electric*, 532 F.2d at 365. Indeed, as the D.C. Circuit has properly noted, "the matters the Commission proceeds to investigate should assist in determining the scope of the complaint." *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 988 (D.C.Cir.1973), *quoted in Western Publishing Co.*, 502 F.2d at 603.

administrative-judicial scheme incorporated in Title VII. The scheme is weighted heavily in favor of achieving voluntary compliance with Title VII's non-discrimination goal through conciliation efforts instigated by the EEOC.[2] By enacting Title VII Congress primarily intended to promote administrative solutions, not judicial ones. Of course, if administrative channels result in an impasse, then the courts become involved. The courts, however, are meant to be a last resort. As noted in *Sanchez:* "Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to obtain voluntary compliance." 431 F.2d at 467. Obviously, if a plaintiff is able to raise at trial issues not raised in his EEOC investigation, he defeats the very purpose for attempting a preliminary administrative resolution. Allowing new and unrelated claims to be raised at trial would render the EEOC investigation and conciliation process a nullity.

Thus, a tension can arise between two policies that are implicit in Title VII: in some cases, an overly expansive application of the liberal construction rule may destroy the vitality of the EEOC's administrative function. *See id.* The courts have sought to offset this effect by requiring any claims raised in the plaintiff's Title VII complaint to be "like or related" or "reasonably related" to the claims outlined in the employee's EEOC charge.

This Court observes that the liberal construction rule seems best suited, if not designed, for cases in which the plaintiff's *pro se* EEOC charge simply lacks specificity. Since vagueness in a plaintiff's claim may frequently be the product of lack of education or communication skills, the EEOC and the courts should allow the plaintiff to inject substance into the otherwise hollow claims by supplementing his conclusory or

cryptic allegations with hard facts.[3] Obviously, if an unintentionally vague claim is susceptible of many interpretations a court must be careful not to foreclose the interpretation intended by the plaintiff.

Quite a different circumstance arises where the employee's EEOC charge alleges a specific wrong, and cites facts in support thereof. In this situation, the EEOC can carry out a sharply-focused investigation into the charge without fearing it might miss the thrust of the employee's claim.

The same situation arises as a court ascertains whether claims raised in a complaint relate to the preceding EEOC charge. When an employee files a highly-specific charge, he thereby circumscribes the number of claims that might "relate" to it. The prospects of a court overlooking what the employee actually *meant* to allege diminish significantly.

### III. CONCLUSIONS OF LAW

In the case at bar, the plaintiff's charge is quite specific. She alleges sex and race discrimination in her termination in the sense that black and white *males* were not fired (or were fired but later rehired) when they took time off from the job for personal reasons. She does not contend that the EEOC investigation delved into any matters other than the plaintiff's particular termination and, perhaps, the defendant's termination procedures. As noted above, the plaintiff's complaint, which dropped any allegations of *race* discrimination, realleges that her termination was due to sex discrimination. It further contends that she was the victim of sex discrimination in training and promotion opportunities.

Considering the specificity of her EEOC charge, the Court concludes that the plaintiff's training and promotion claims are not

---

2. The whole purpose of the EEOC investigation is to uncover the facts that underlie the employee's charge, weight those facts, and then, if it finds reasonable cause to believe that an unlawful employment practice has occurred, attempt to induce conciliation between the parties. *See* 29 C.F.R. § 1601.24 (1982).

3. EEOC regulations specifically authorize the Commission to request the aggrieved party to supplement his charge with additional facts, 29 C.F.R. § 1601.15(b) (1982), and may require the parties to engage in a "fact-finding conference". 29 C.F.R. § 1601.15(c) (1982).

sufficiently related to her termination claim. The former claims address the *terms* of the plaintiff's employment. The latter claim simply involves a single decision of the employer to terminate the employee. Thus, the claims are conceptually distinct. The Court further observes that when confronted with similar fact situations, it and other courts have reached the same conclusion. *See Paulino v. Miller,* No. LR–C–81–526 (E.D.Ark. Mar. 30, 1983) (Plaintiff's claims of discrimination in pay, promotion, benefits, work requirements, demotions and personnel evaluations were not "like or related to" the termination claim raised in her EEOC charge); *Ferrell v. Association of Central Oklahoma Governments,* 481 F.Supp. 125, 127–28 (W.D.Okl. 1978) (Title VII plaintiff could not proceed on claims of discrimination in promotions when the EEOC charge related only to plaintiff's termination.). *See also Wilson v. Allied Chemical Corp.,* 456 F.Supp. 249, 253–54 (E.D.Va.1978).

Although each case must be assessed on its own facts, the facts in the case at bar do not require a contrary holding to the decisions reached in *Paulino* and *Ferrell.* The plaintiff's charge is not vague; rather it is very clear and specific. To find that her promotion and training claims relate to her termination claim defies logic. To allow her to proceed with these claims in Count II of the complaint would sanction the circumvention of the EEOC's administrative function. This the Court will not do.

It is therefore Ordered that the defendant's motion to dismiss Count II of the complaint be, and it is hereby, granted.